235 N.J. Super. 337 (1989)
562 A.2d 260
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CURTIS LETMAN AND WHARTON MURRAY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1989.
Decided August 4, 1989.
*338 Before Judges O'BRIEN and SCALERA.
Susan W. Sciacca, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (John G. Hall, Assistant Attorney General in Charge, Acting Bergen County Prosecutor, attorney; Susan W. Sciacca, of counsel and on the letter brief).
Ronald C. Hunt argued the cause for respondents (Ashley & Charles, attorneys for respondent Curtis Letman; Thomas R. Ashley, of counsel; Maurice Strickland, attorney for respondent Wharton Murray; Ronald C. Hunt, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
By leave granted, the State appeals from an order suppressing evidence seized from the trunk of a vehicle operated by defendant Wharton Murray in which defendant Curtis Letman was a passenger. We reverse.
*339 On April 27, 1988 at approximately 9:00 p.m., Trooper Edward Romanczuk (trooper) was on routine patrol in a marked vehicle on the New Jersey Turnpike in Lyndhurst. As he drove in the right lane through a construction zone, he observed a vehicle approximately five car lengths ahead of him move to the center lane, pass a truck, return to the right lane, and accelerate. After pulling abreast of the vehicle, the trooper ascertained that it was traveling 57 miles per hour in a construction zone clearly posted with a speed limit of 45 miles per hour and stopped it.
After the vehicle was stopped, the trooper asked Murray for his credentials, which indicated the vehicle was owned by Murray's wife. Letman was seated in the front passenger seat. As the trooper scanned the interior of the vehicle with his flashlight for his personal safety, he observed a clear plastic bag protruding about one-third of the way from underneath the left portion of the floor mat on the passenger side. The plastic bag was folded in half and wrapped in the middle with a yellow paper towel or napkin. Visible inside the protruding edge of the plastic bag was a chunky white powdery substance which the trooper suspected, and it was later confirmed, to be cocaine.
Trooper Romanczuk asked Murray what was under the floor mat. Murray replied he did not know nor did he know how it came to be there. With this reply the trooper directed both men to place their hands on the dashboard. First he asked Letman to step out of the car and asked him what was under the mat. Letman said it had been there when he entered the vehicle. Trooper Romanczuk noted that Letman appeared nervous when he approached him. The trooper then asked Murray to get out of the vehicle through the passenger side door. Thereafter, a pat-down of both men outside the car produced negative results. Defendants were directed to sit on the hood of the vehicle.
After he retrieved the plastic bag, the officer placed both men under arrest, handcuffed them and put them in the rear *340 seat of the police car after advising them of their Miranda[1] rights. The trooper then asked Murray if there was anything else in the car. Murray replied that he had placed a bag in the trunk, but did not know its contents. At the time, Murray's lips were quivering and there was sweat on his brow.[2] The trooper then returned to the vehicle, removed the keys from the ignition and opened the trunk. Inside he discovered a brown paper bag in which there were four smaller paper bags containing a total of 364 plastic vials of the type used for the distribution of cocaine. After defendants were taken to police headquarters and strip searched, additional cocaine and marijuana were found in Letman's wallet, and a small amount of cocaine was found in Murray's wallet.
Defendants were indicted for possession of cocaine in an amount between one-half ounce and five ounces, containing at least 3.5 grams of pure free base drug with intent to distribute (N.J.S.A. 2C:35-5a(1) and 2C:35-5b(2)) and possession of the same cocaine (N.J.S.A. 2C:35-10a(1)). Each defendant was also charged individually in separate counts with possession of cocaine (apparently referring to the cocaine found on the person of each defendant).
Both defendants moved to suppress the evidence seized. After a hearing on January 9, 1989, the motion judge denied the motion to suppress the 4.2 ounces of cocaine found in the passenger compartment. The judge also denied the motion to suppress the evidence found on the person of each defendant. However, the judge granted the motion to suppress the 364 empty vials in the brown paper bags which had been seized *341 from the trunk of the vehicle. We granted the State's motion for leave to appeal from that determination and now reverse.[3]
In his oral opinion, the motion judge concluded that defendant's vehicle was properly stopped for a motor vehicle violation, citing Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and that the cocaine contained in the plastic bag in the passenger compartment of the vehicle was properly seized as being in plain view. See State v. Bruzzese, 94 N.J. 210, 235-239 (1983). The judge then found the trooper had properly removed the occupants from the vehicle and conducted a Terry[4] pat-down search. The judge then stated:
[The trooper] engaged in [a] somewhat unusual, I've never heard of this before, somewhat unusual conversation with the passenger in which he asked the passenger if there was anything else in the car. And this person said there's a bag in the trunk, I put it there, but I don't know what's in it, meaning what's in the bag.
Actually, the trooper testified that after he had arrested defendants, handcuffed them, and placed them in the rear of the patrol car, he advised them of their Miranda rights before he asked Murray, the driver, if there was anything else in the vehicle. It is not clear why the motion judge found this conversation unusual but, in any event, the trooper testified that Murray told him he had placed a bag in the trunk of the vehicle but didn't know what was in the bag, and at the time he was extremely nervous.
In suppressing the 364 empty vials, the motion judge concluded:
These items for which the trooper contends he had probable cause should have been the subject of a search warrant. The trooper had no reason to believe that the items for which he was searching was in and of itself evanescent; moreover, there was no longer an exigency because at the time the trunk was open *342 the motor vehicle was under the care, custody and control of the State Police. The defendants themselves were arrested, handcuffed and in a State Police vehicle, or in any case not in any position where they could be expected to remove the motor vehicle.
In reaching this conclusion the judge erred. He appears to have relied upon State v. Patino, 83 N.J. 1 (1980). While the facts in that case are somewhat similar to this case, there are some marked differences. Initially, the State argued in Patino that the search of the trunk of the vehicle was incident to the lawful arrest of defendants for possession of less than 25 grams of marijuana. In this case, the State does not argue that the trunk was searched as an incident to the lawful arrest of Murray and Letman for possession of 4.2 ounces of cocaine.[5]
In State v. Patino, the Court recognized that under the automobile exception to the warrant clause, the police are permitted to stop and search a moving or readily movable vehicle where there is probable cause to believe the vehicle contains criminally related objects. Id. at 9. Nevertheless, the Court in Patino concluded that possession of the small amount of marijuana there involved did not alone, without other circumstances, suggest defendant's participation in drug traffic or his possession of more contraband sufficient to justify extension of the zone of exigent search further than the persons of the occupants or the interior of the car. See id. at 12-15. In this case, however, defendants had been arrested for the possession of 4.2 ounces of cocaine, a fairly substantial amount. Both defendants here denied knowledge of the contents of the plastic bag in which the cocaine was found, and Murray, after being given his Miranda warnings, responded to a question from the trooper that he had placed a bag in the trunk of the vehicle but he did not know its contents. At the time he was *343 extremely nervous. These are the very type of circumstances that the Patino Court referred to, as providing probable cause to search the entire vehicle including the trunk and the interior of the paper bags found in the trunk.
The Fourth Amendment proscribes all unreasonable searches and seizures. Warrantless searches are per se unreasonable, subject only to a few specifically established and well delineated exceptions. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). The automobile exception to the warrant requirement recognized in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), is unquestionably one that is specifically delineated. United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed. 572, 594 (1982). The Carroll Court stated the rule to be:
On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.[6] The 4th Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens. [Footnote supplied.] [267 U.S. at 146, 45 S.Ct. at 282, 69 L.Ed. at 549]
In United States v. Ross, the Supreme Court acknowledged that exigency was the basis for the creation of the automobile exception. The Court pointed out that since its earliest days, Congress has recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods. 456 U.S. at 806, 102 S.Ct. at 2163, 72 L.Ed.2d at 582.
The Ross Court continued:
It is this impracticability, viewed in historical perspective, that provided the basis for the Carroll decision. Given the nature of an automobile in transit, the *344 Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance. In this class of cases, the Court held that a warrantless search of an automobile is not unreasonable. [456 U.S. at 806-807, 102 S.Ct. at 2163, 72 L.Ed.2d at 582].
However, the Ross Court recognized that the Court in Carroll had emphasized the importance of the requirement that the officers have probable cause to believe that the vehicle contains contraband. 456 U.S. at 807, 808, 102 S.Ct. at 2163, 2164, 72 L.Ed.2d at 583.
In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), the Court discussed the preference for procuring a search warrant, stating:
For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. [399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428]
In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), however, the Supreme Court indicated that the rationale justifying the automobile exception is now much broader. The Carney Court stated:
[A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said are twofold. `Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' [Citations omitted.] [471 U.S. at 391, 105 S.Ct. at 2069, 85 L.Ed.2d at 413.]
The Court's current view of the automobile exception was summed up in Carney as follows:
In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met. [471 U.S. at 392, 105 S.Ct. at 2070, 85 L.Ed.2d at 414]
In United States v. Ross, the Court held that the police may conduct a search of a vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. 456 U.S. at 800, 102 S.Ct. at 2160, 72 L.Ed.2d at 578.
*345 Although Article I, paragraph 7, of the New Jersey Constitution of 1947 is taken almost verbatim from the Fourth Amendment, the New Jersey Supreme Court has reserved its right to construe the New Jersey constitutional provision more strictly. See State v. Alston, 88 N.J. 211, 225 (1981). However, with regard to the automobile exception, the New Jersey Supreme Court has paralleled the United States Supreme Court and has based its recent holdings on its interpretation of the latter's decisions. For example, in Alston, the Court said at pp. 230-231:
In the instant case the State claims that the `automobile exception to the Warrant Clause, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), validates the warrantless search that led to the seizure of the two handguns....
The automobile exception, first articulated in Carroll v. United States, supra, holds a search warrant unnecessary when the police stop an automobile on the highway and have probable cause to believe that it contains contraband or evidence of a crime. See Colorado v. Bannister, 449 U.S. 1, 2, 101 S.Ct. 42, 43, 66 L.Ed.2d 1, 3 (1980); Arkansas v. Sanders, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235, 242 (1979). The primary rationale for this exception lies in the exigent circumstances created by the inherent mobility of vehicles that often makes it impracticable to obtain a warrant. See Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970). While `[t]he word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears,' Coolidge v. New Hampshire, 403 U.S. 443, 461-62, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971), the Carroll exception is further supported by the somewhat diminished expectation of privacy surrounding automobiles, `which arises from the facts that a car is used for transportation and not as a residence or a repository of personal effects, that a car's occupants and contents travel in plain view, and that automobiles are necessarily highly regulated by government.' Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). See United States v. Chadwick, 433 U.S. 1, 12-13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538, 549 (1977); Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325, 335 (1974); Cady v. Dombrowski, 413 U.S. 433, 441-43, 93 S.Ct. 2523, 2528-29, 37 L.Ed.2d 706, 714 (1973). As stated by the Supreme Court in Chambers, supra, probable cause is the minimal requirement for a constitutionally reasonable search of a readily movable vehicle stopped on the highway. 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 438. See Patino, supra, 83 N.J. at 10, State v. Waltz, 61 N.J. 83, 87 (1980). `Probable cause is more than bare suspicion but less than legal evidence necessary to convict.' Patino, supra, 83 N.J. at 10. It has been defined by this Court as a `well grounded suspicion' that a crime has been or is being committed. Id.; State v. Waltz, supra, 61 N.J. at 87; State v. Burnett, 42 N.J. 377, 387 (1964).
*346 In Alston, the Supreme Court, after finding that all defendants had standing to move to suppress the evidence seized and discussing the automobile exception to the warrant clause, found that the officers had probable cause to conduct the warrantless search of the passenger compartment that revealed the two handguns.[7] 88 N.J. at 232. The Alston Court reasoned that the presence of shotgun shells in the glove compartment and a sawed-off shotgun under the front passenger seat, both of which were in plain view, coupled with the defendant's furtive and unusual movements in the back seat before the vehicle was stopped afforded a more than adequate basis for a well grounded suspicion that defendants had secreted other weapons in the passenger compartment of the vehicle. Ibid. The Alston Court then rejected the defendants' argument that probable cause notwithstanding, a warrant was necessary for further search of the passenger compartment, for once they were removed from the vehicle and arrested, the car was not readily movable nor was it impracticable to secure a warrant. The Court stated 88 N.J. at pp. 234-235:
These exigent circumstances do not dissipate simply because the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement. See State v. Waltz, supra; State v. Sessions, supra, 172 N.J. Super. [558] at 566. See also State v. Kahlon, 172 N.J. Super. 331, 340 (App.Div. 1980). The characterization of ready mobility of the vehicle as envisioned by Chambers is applicable to the vehicle itself, and the car is readily movable until such time as it is seized, removed from the scene and securedly impounded by the police. Until then it is potentially accessible to other persons who might move or damage it or remove or destroy evidence contained in it. Under Chambers, however, when there is probable cause to conduct an immediate search at the scene of the stop, the police are not required to delay the search by seizing and impounding the vehicle pending review of that probable cause determination by a magistrate. `[T]here is little to choose in terms of practical consequence between an immediate search without a warrant and the car's immobilization until a warrant is obtained.' Chambers, supra, 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d 419.
*347 The dictum in the Alston decision which implies that once the motor vehicle is removed to and secured at police headquarters a search warrant must be obtained, was rejected in State v. Guerra, 93 N.J. 146 (1983). There, the police, upon lawfully stopping an automobile, detected a strong odor of raw unburned marijuana emanating therefrom. The police did not search the automobile, including its trunk and the packages found therein, until after they had removed it to police headquarters. The Supreme Court, citing State v. Kahlon, 172 N.J. Super. 331, 338 (App.Div. 1980), certif. den. sub nom. Kahlon v. New Jersey, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981), concluded that the officers had probable cause to search the trunk for evidence of contraband. It noted that the motion judge, in denying the suppression motion, properly applied the reasoning of Chambers v. Maroney for the conclusion that, "if a warrantless search could have been made at the scene, it could have been made at the barracks." Guerra, 93 N.J. at 150. The Guerra Court also cited State v. Patino for the proposition that the extent of the search of an automobile depends upon the degree of probable cause. Ibid. The conclusion by the motion judge here that our decision in State v. Kahlon was modified by State v. Patino is dispelled by the Guerra decision. The conclusion by the motion judge that the exigency authorizing further search of the automobile had dissipated once Letman and Murray were placed under arrest, handcuffed, and placed in the police car, is contrary to the law of this State.
Former Chief Justice Weintraub, in discussing the automobile exception in State v. Boykins, 50 N.J. 73 (1967), said at pp. 81-82:
Here we are not dealing with the privacy of a home, or of a place of business. We are not dealing with something which is immobile and is thereby limited in its usefulness to the criminal element. Rather the subject is a motor vehicle, which, for all its blessings, is high among the agencies of crime. The automobile is perfectly suited for that use. It provides cover for weapons, contraband, and the fruits of crime. It supplies a capacity to strike without warning and to leave without trace. No discussion of crime can ignore the automobile, or the *348 fact that the incidence of crime is hinged directly to the amount of privacy we accord it.
The States remain free, and obliged, to devise `workable rules' of search and seizure to meet `the practical demands of effective criminal investigation and law enforcement.' Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 738 (1963). In Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949), which involved a search of an automobile, the Court stressed that probable cause is `a practical, nontechnical conception' and that,
`* * * Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.'
We conclude that Trooper Romanczuk clearly had probable cause to open the trunk of this vehicle after seizing the 4.2 ounces of cocaine found in the passenger compartment, arresting defendants for its possession, and being informed by Murray, after having given him his Miranda rights, that he had placed a bag in the trunk but he did not know its contents, which statement was made under circumstances of extreme nervousness.
The decision of the motion judge was based upon an erroneous concept of the automobile exception as to the dissipation of the exigent circumstances. Accordingly, the resulting suppression order was improperly entered.
Reversed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), reh. den. California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).
[2] At the hearing the trooper explained that both men became visibly nervous when asked about the bag. In response to defense counsel's challenge that many people would appear nervous when stopped by the police, the trooper explained that defendants' nervousness was more apparent than on a regular motor vehicle stop.
[3] Defendants have not cross-appealed from the denial of their motion to suppress the evidence found inside the passenger compartment of the vehicle and on their persons. Thus we deal solely with the suppression of the evidence found in the trunk.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[5] For some unexplained reason defendants argue in their brief that the State claimed that the trunk of the vehicle was searched as an incident to a lawful arrest. Furthermore, defendants seem to misstate the principles applicable to such a search, see New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), although that case did not involve the search of a trunk.
[6] The opinion has been expressed that the reasoning in Carroll concerning the need to permit a warrantless search suggests that a warrantless search of a car would be permissible with respect to any type of object for which a warrant to search could be obtained were there time to secure a warrant. See 3 LaFave, Search & Seizure-A Treatise on the Fourth Amendment § 7.2(a) at 23 (2d ed. 1987). Cases decided subsequent to Carroll support this proposition, but see footnote 7.
[7] In a footnote, the Court emphasized that the search in this case was for weapons in the passenger compartment of the automobile, not for drugs or other contraband in the trunk, citing Patino. 88 N.J. at 232, n. 14.