788 A.2d 284 (2001)
STATE of New Jersey, Plaintiff-Respondent,
v.
Danelle HAMMER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2001.
Decided December 6, 2001.
*286 Peter A. Garcia, Acting Public Defender, for appellant (Barbara A. Hedeen, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for respondent (Linda A. Rinaldi, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, EICHEN and LINTNER.
*285 The opinion of the court was delivered by JEICHEN, J.A.D.
This appeal arises from the warrantless search of an automobile stopped by a State trooper on the Atlantic City Expressway for speeding. The search was conducted under the "automobile exception" to the warrant requirement. Defendant Danelle Hammer was an occupant of the automobile. Cocaine was discovered in the glove box and luggage found in the trunk. Defendant lost her motion to suppress the evidence and pleaded guilty to first degree possession of cocaine, in a quantity of five ounces or more, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 5(b)(1). In accordance with the terms of the negotiated plea, defendant received a ten-year sentence of imprisonment, three and one-third years to be served without parole. Statutory fines and penalties were imposed.
On appeal, defendant contends that her motion to suppress should have been granted because the State lacked probable cause and exigent circumstances to justify the warrantless search of the automobile trunk and its contents. Defendant further asserts that her guilty plea should be vacated because the State did not utilize the guidelines established under State v. Brimage, 153 N.J. 1, 706 A.2d 1096 (1998), before making its plea offer.
We hold that the State trooper investigating the motor vehicle stop in this case did not violate defendant's rights under the Fourth Amendment of the United States Constitution or under Article I, Paragraph 7 of the New Jersey State Constitution. However, we conclude that defendant is entitled to a remand of the matter so that the prosecutor, utilizing the Brimage guidelines, can engage in appropriate negotiations with defendant concerning a sentence recommendation.
The facts leading to the search and subsequent arrest of defendant are undisputed and are derived solely from evidence presented by State Trooper Christopher Dean Rocap. On the afternoon of December 21, 1997, at approximately 1:00 p.m., Trooper Rocap was operating a stationary radar at milepost 14.8 eastbound on the Atlantic City Expressway, when he clocked a 1982 Cadillac with Pennsylvania license plates traveling eighty miles per hour in a fifty-five mile per hour zone. He activated his overhead lights and pulled over the vehicle for speeding. Upon approaching the driver's side of the vehicle, Trooper Rocap observed open containers of Budweiser beer in the car. A female, later identified as defendant, was seated in the rear of the car, and two males were in the front. The driver was later identified as Ronald Hammer, *287 defendant's husband. Seated beside him was co-defendant John Weigel.[1]
Mr. Hammer advised the officer that he owned the vehicle but was unable to provide a license or any other driving credentials to the trooper. Trooper Rocap then instructed Mr. Hammer to exit the vehicle. He complied and, as he exited, two hollow point bullets fell to the ground from his coat. Fearing that one of them might have a gun, Trooper Rocap drew his weapon and ordered the other two occupants to keep their hands where they could be seen and to step out of the car. After patting each person down with negative results, he directed them to lie down on the ground, handcuffed Mr. Hammer and Mr. Weigel with the only two sets of handcuffs he had, and called for back-up assistance.
After the back-up unit arrived, Trooper Rocap searched the interior of the vehicle for weapons. The search revealed a small digital scale and a metal pipe under the front seat, but no weapon. A search of the glove box disclosed ten hypodermic needles in a sealed bag and "a zip-lock bag full of white powder substance." No weapon was found in the interior of the car. Trooper Rocap seized the cocaine, and then asked each of the car's three occupants if they "knew anything about the drugs that were in the vehicle." All three denied any such knowledge.
After completing his search of the vehicle's interior, Trooper Rocap asked defendant if there were any narcotics or weapons in the trunk. Defendant stated that he had "never" been in the trunk of the car. Trooper Rocap then checked the lock on the trunk and observed "a punched out hole" with "no lock whatsoever." There was no key to the trunk or the doors of the vehicle. Only an ignition key was present. The trooper then went back into the glove compartment and pressed the electronic trunk release button and the trunk opened. Inside the trunk was a locked black briefcase and a red duffle bag. Trooper Rocap unzipped the duffle bag and observed personal items inside with Mr. Hammer's name on them. "[M]ore CDS and more hypodermic needles" were located in another zipped compartment of the bag. Trooper Rocap then cut open the locked briefcase and discovered "more small packages of a white powder substance," and various drug paraphernalia. Metal spoons, and additional smoking pipes were also found in the briefcase. No weapon was found in the trunk.
At the close of the hearing, the judge reviewed the evidence concluding that probable cause existed to justify a warrantless search of the trunk and its contents and that since the vehicle could have been impounded and driven to the police station and searched, a highway search conducted without a warrant was permissible. The judge did not address the exigency requirement.

I.
"A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Cooke, 163 N.J. 657, 664, 751 A.2d 92 (2000); State v. Alston, 88 N.J. 211, 230, 440 A.2d 1311 (1981). Moreover, the State has a heavy burden in seeking to validate a warrantless search by bringing it within one of those exceptions. Ibid. One of those exceptions is the "automobile exception" which permits warrantless searches of readily movable vehicles if law enforcement officers have probable cause to believe the vehicle contains evidence of a crime. Cooke, supra, 163 N.J. at 664, 751 A.2d 92. "The *288 rationale for this exception is grounded in the exigent circumstances created by the inherent mobility of vehicles and the somewhat lessened expectation of privacy in one's vehicle." Id. at 667, 751 A.2d 92 (quoting State v. Patino, 83 N.J. 1, 9, 414 A.2d 1327 (1980)). This "lessened expectation of privacy," when combined with the existence of probable cause and the overall exigency of the situation, may justify the warrantless search. Cooke, supra, 163 N.J. at 670, 751 A.2d 92; State v. Colvin, 123 N.J. 428, 429, 587 A.2d 1278 (1991); Patino, supra, 83 N.J. at 9-10, 414 A.2d 1327.
Under the New Jersey State Constitution, Article I, Paragraph 7, a warrantless search of an automobile requires both probable cause and exigent circumstances. Cooke, supra, 163 N.J. at 671, 751 A.2d 92. In contrast, the Fourth Amendment of the United States Constitution has "no separate exigency requirement." Id. at 665, 751 A.2d 92 (quoting Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442, 445 (1999)). See also Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031, 1036 (1996). Because the New Jersey Constitution affords greater rights to a criminal defendant than the federal constitution, we must analyze the trunk search conducted by Trooper Rocap under the New Jersey Constitution which requires a demonstration of both probable cause and exigent circumstances to justify the warrantless search. See Cooke, supra, 163 N.J. at 666, 751 A.2d 92.
We address first defendant's contention that the trooper lacked probable cause to search the trunk of the car and its contents. Probable cause is an elusive concept "incapable of precise definition." Cooke, supra, 163 N.J. at 676, 751 A.2d 92. It is "more than a bare suspicion, but less than legal evidence necessary to convict" beyond a reasonable doubt. Patino, supra, 83 N.J. at 10, 414 A.2d 1327. Probable cause is a well-grounded suspicion that a criminal offense has been or is being committed. State v. Burnett, 42 N.J. 377, 387, 201 A.2d 39 (1964).
The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that the object may be found. State v. Esteves, 93 N.J. 498, 508, 461 A.2d 1128 (1983) (discovery of starter pistol in vehicle and CDS in knapsack justified search of tin foil); State v. Alston, supra, 88 N.J. at 217, 440 A.2d 1311 (1981) (shotgun shells in glove compartment justified search of passenger compartment and seizure of opaque plastic bag containing shotgun); Patino, supra, 83 N.J. at 10, 414 A.2d 1327. Indeed, once probable cause exists to search the interior of a motor vehicle, the police may search every part of the vehicle, including containers in which there is probable cause to believe that the object of the search may be found. United States v. Ross, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982); see State v. Guerra, 93 N.J. 146, 150, 459 A.2d 1159 (1983) (noting that warrantless search of trunk and its contents was clearly justified under the "automobile exception").
Applying these principles to the facts presented here, we have no hesitancy in concluding that the unfolding events confronting Trooper Rocap furnished him with probable cause to search the trunk and its contents. Upon ordering the driver from the vehicle after he was unable to produce any driving credentials, the trooper observed the hollow point bullets fall from the driver's coat.[2] This occurrence *289 immediately created a reasonable belief that the occupants may possess dangerous weapons or that such weapons may be concealed in the car. See Alston, supra, 88 N.J. at 232, 440 A.2d 1311. Those concerns justified the immediate pat-down of the occupants and the ensuing search of the interior of the car. When that search proved negative for weapons but produced a "zip-lock bag full of a white powder substance," the trooper's concern for his personal safety escalated, and he expanded the scope of his search to the trunk to look for weapons. Given the trooper's experience and training, and the fact that drug traffickers often possess weapons, his discovery of what appeared to him to be a sizeable amount of drugs,[3] coupled with the hollow point bullets, established probable cause to search the trunk and its contents for weapons, if not for additional contraband. But see Patino, supra, 83 N.J. at 12, 414 A.2d 1327 (small amount of marijuana found in the passenger compartment of the vehicle did not reasonably give rise to inference that additional criminal contraband was in the trunk or that officer's safety was jeopardized so as to justify warrantless search of trunk).
We turn next to the question whether the State presented sufficient evidence of exigency to justify the warrantless search. "The justification to conduct a warrantless automobile search ... turns on the circumstances that make it impracticable to obtain a warrant when the police have probable cause to search the car." Cooke, supra, 163 N.J. at 667, 751 A.2d 92 (quoting Colvin, supra, 123 N.J. at 437, 587 A.2d 1278).
In Cooke, Justice Verniero, writing for the Court, reviewed numerous decisions in our search and seizure jurisprudence under the "automobile exception" and described certain of the factual scenarios establishing the required exigency. We need not review all of the cases because we are satisfied that the decision that comes closest to describing the present situation is Alston, supra, 88 N.J. at 211, 440 A.2d 1311. Describing the facts there, the Court concluded the warrantless search of the vehicle was justified:
In Alston, the officers followed a speeding car. The passengers of the vehicle moved furtively, as if they were trying to conceal something. During a valid stop, the officer observed shot gun shells and a bag on the floor protruding approximately twelve inches from under the seat. The officer felt the bag and concluded the object was a shotgun. A further search of the vehicle revealed additional weapons. We upheld the search because the events leading up to the search were spontaneous and unforeseeable, and posed a potential threat to officer safety. Thus, there were exigent circumstances to justify the warrantless search.

[Cooke, supra, 163 N.J. at 668, 751 A.2d 92 (emphasis added) (citations omitted).]
The Court reiterated the circumstances that justify a warrantless search under the "automobile exception" as "unforeseeability and spontaneity of the circumstances giving rise to probable cause, and the inherent mobility of the automobile." Id. at 672, 751 A.2d 92 (quoting Alston, supra, 88 *290 N.J. at 233, 440 A.2d 1311). After repeating the principles enumerated in Alston, the Court added that "[e]xigent circumstances may exist if the unanticipated circumstances that give rise to probable cause occur swiftly." Ibid. Stated another way, exigent circumstances "refers to a need for prompt action without a warrant `when the police have no advance knowledge of the events to unfold.'" Colvin, supra, 123 N.J. at 433, 587 A.2d 1278 (quoted in State v. Santiago, 319 N.J.Super. 632, 639, 726 A.2d 301 (App.Div.1999)).
Colvin, like Cooke, involved a parked car. Through surveillance and an informant's tip provided after the defendant was arrested, the police discovered that the defendant there was selling drugs "stashed" in the vehicle. Colvin, supra, 123 N.J. at 430, 587 A.2d 1278. In that circumstance, the Court recognized the potential for the destruction or loss of the evidence should a warrant be required before a search could be performed. Explaining that even after the defendant was arrested for selling drugs from the vehicle, there still existed a strong probability that "confederates [would be] waiting to move the evidence." Id. at 435, 587 A.2d 1278. The Court then noted that assigning "a special police detail" to guard a vehicle while the police obtain a warrant to search the car is often "unduly burdensome and reasonably restrictive." Ibid. In such circumstance, the Court concluded it was impracticable to require a warrant before the police seized the vehicle and searched it. Ibid.; see also Cooke, supra, 163 N.J. at 674, 751 A.2d 92 (similar facts).
In the present case, the trooper was involved in a rapidly developing criminal investigation involving "unforeseen and spontaneous" events in which it would have been potentially dangerous to delay searching the trunk and its contents for weapons until a warrant could be obtained. Notably, neither the car nor the trunk had a locking device. Only an ignition key was present. That situation not only increased the potential accessibility of the car to third persons, thereby enhancing the potential for loss or destruction of the evidence, but also posed a safety risk to the officers and the public should there have been weaponry in the trunk. As Cooke recognizes, "until the vehicle is seized by the police and removed from the scene, `it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it.'" Ibid.
We hold that New Jersey does not require a police officer involved in a fluid, on-going criminal investigation on a busy highway to stop what he is doing, post a special detail to guard the vehicle, to obtain a warrant where to do so could endanger his life, or the lives of others. See State v. Pante, 325 N.J.Super. 336, 352, 739 A.2d 433 (App.Div.1999); see also State v. Alvarez, 238 N.J.Super. 560, 570, 570 A.2d 459 (App.Div.1990) (quoting United States v. Hultgren, 713 F.2d, 79, 87 (5th Cir.1983)). The fact that back-up assistance had arrived, and secured the occupants does not mean that the exigency had dissipated. See Cooke, supra, 163 N.J. at 672, 751 A.2d 92 (quoting Alston, supra, 88 N.J. at 234, 440 A.2d 1311) ("[E]xigent circumstances do not dissipate simply because the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement"). Indeed, as the motion judge recognized, in these circumstances, instead of searching the trunk on a dangerous highway, the trooper would have been justified in arresting the occupants and having his back-up officers transport them and the vehicle to the trooper's barracks, where the search could proceed without a warrant. See Guerra, *291 supra, 93 N.J. at 150, 459 A.2d 1159 ("if a warrantless search could have been made at the scene, it could have been made at the barracks") (citing Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)); see also State v. Letman, 235 N.J.Super. 337, 347, 562 A.2d 260 (App. Div.1989). Accordingly, we are satisfied under the standards expressed in Cooke, and its view of relevant precedent, that both exigent circumstances and probable cause were established in these circumstances and, therefore, no warrant was required for the search of the trunk and its contents. The motion judge properly denied the motion to suppress.

II.
Defendant contends that she did not receive a plea offer pursuant to Brimage, supra, 153 N.J. 1, 706 A.2d 1096, and that a remand is required in order to afford her the opportunity to either withdraw or renegotiate her plea. The State acknowledges that the record is silent as to any reference to Brimage.
"[A] prosecutor, may through a negotiated plea agreement or post-conviction agreement with a defendant, waive the mandatory minimum sentence specified for any offense under the CDRA [Comprehensive Drug Reform Act]" (the Act). Brimage, supra, 153 N.J. at 3, 706 A.2d 1096; see N.J.S.A. 2C:35-12. The Attorney General has promulgated guidelines for negotiating pleas under that section of the Act. Further, "[a] defendant who shows clearly and convincingly that the [prosecutor's] exercise of discretion was arbitrary and capricious [is] entitled to [judicial] relief." State v. Vasquez, 129 N.J. 189, 196, 609 A.2d 29 (1992); see also State v. Lagares, 127 N.J. 20, 26-33, 601 A.2d 698, (1992). Here, there is no indication the prosecutor considered the guidelines in extending the plea offer. The State acknowledges that although defendant received the lowest mandated sentence for a first degree offense under the Act, "some of the mitigating factors to be considered in the Brimage Guidelines may have been applicable to defendant." Accordingly, the State agrees the matter must be remanded to the trial court.
On remand, the assistant prosecutor shall engage in negotiations concerning a sentence recommendation with defendant utilizing the appropriate guidelines and state reasons for the offer. If the sentence recommendation is not acceptable to defendant, she shall then be given an opportunity to convince the court by clear and convincing evidence that the prosecutor's exercise of discretion was arbitrary and capricious.
The conviction is affirmed; the matter of defendant's plea is remanded for further proceedings not inconsistent with this decision.
NOTES
[1] Mr. Hammer and Mr. Weigel were also convicted and sentenced to a custodial term.
[2] Defendant does not dispute that the trooper was entitled to order the driver of the automobile out of the vehicle as soon as he learned that the driver had no driving credentials and observed the empty beer containers on the floor, nor does he dispute the trooper's right to search the interior of the vehicle.
[3] The exact quantity of drugs is unknown as the contraband was combined with the additional drugs found in the trunk. Suffice it to say, the reference to "a zip-lock bag full of a white powder substance" suggests a quantity that was not insubstantial.