**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2757-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDRE SMITH,

     Defendant-Appellant.

_____

        Argued November 2, 2020 – Decided February 12, 2021

        Before Judges Messano and Hoffman.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 17-08-0873 and 17-08-0874.

        Candance Caruthers, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Candance Caruthers, of counsel and on the brief).

        Catlin A. Davis, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Catlin A. Davis, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence, defendant Andre Smith pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); second-degree certain persons not have weapons, N.J.S.A. 2C:39-7(b)(1); and third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(b)(11). On July 20, 2018, the trial court sentenced defendant, imposing an aggregate prison term of thirteen years with an eight-year, nine-month period of parole ineligibility. Defendant now appeals the February 21, 2018 order denying his motion to suppress as well as the trial court's sentencing decision. We affirm.

I.

In August 2017, a Middlesex County grand jury returned Indictment No. 17-08-0873, charging defendant with second-degree possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count one); fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3) (count two); third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count three); second-degree possession of a firearm while in the course of committing a CDS offense, N.J.S.A. NC:39-4.1(a) (count four); second-degree unlawful possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a) (count five);

fourth-degree possession of hollow nose or dum-dum bullets, N.J.S.A. 2C:39-3(f) (count six); and fourth-degree unlawful receipt or acquisition of handgun ammunition, N.J.S.A. 2C:58-3.3(b) (count seven). On the same day, the grand jury also returned Indictment No. 17-08-0874, which charged defendant with an eighth offense: second-degree certain persons not to have weapons or ammunition, N.J.S.A. 2C:39-7(b)(1) (count one). Thereafter, defendant filed a motion suppress to evidence.

At an evidentiary hearing on the motion, conducted on February 21, 2018, the State presented the testimony of one witness, Detective Badawy of the North Brunswick Police Department. At the time of the motion hearing, Detective Badawy had been a police officer for ten years, the past six on the North Brunswick force, and had participated in "multiple . . . narcotics trainings" that covered the detection of narcotics and narcotics transactions; in his career, he had made "[h]undreds" of narcotics-related arrests.

Detective Badawy recounted that on May 10, 2017, he and two other officers, Detectives Powell and Vitelli, were conducting surveillance in the parking lot of the Farrington Inn Motel (the motel). Detective Badawy described the motel as a high crime area, to which he was dispatched "all the time[.]" According to Detective Badawy, throughout his tenure in North Brunswick, he

personally had made between twenty-five and forty arrests at the motel, many of which were for possession of illegal drugs. He explained that some of these arrests were made after being dispatched in response to reported criminal activity, while others resulted from "proactive" police action, i.e. "just stopping cars that were in that [motel] or, you know, in that vicinity . . . for motor vehicle violations." He also testified that he did not have prior knowledge that defendant would be at the motel on the date of his arrest.

While surveilling the motel, Detective Badawy observed a dark-colored car enter the motel parking lot and an individual enter the car through the passenger side door after emerging from one of the motel's rooms. The individual remained in the car for about forty seconds before exiting the car and returning to his motel room. "Based on [his] training and experience of narcotics work[,]" Detective Badawy believed the conduct he observed "was indicative of a narcotics transaction."

Detective Badawy then observed the vehicle exit the parking lot and proceed onto Route 130 South. The detectives followed the car, which immediately merged from the right-most lane across the middle lane to the left-most lane without signaling. Based on this improper lane change, the detectives

4

signaled the car to pull over. Upon stopping the car, Detective Badawy noted the car was occupied only by its driver, who was later identified as defendant.

Detective Badawy testified that "immediately when [he] approached the window, [he] could detect the odor of raw marijuana emanating from inside the vehicle." When questioned about the "strong odor of raw marijuana," defendant attributed it to a tobacco cigar. Defendant cooperated when asked to step out of his car, and admitted "that he had an amount of marijuana in the vehicle" when questioned again about the source of the smell.

Detectives Badawy and Powell then searched the interior of the car's passenger compartment. Detective Badawy discovered "a large amount [of marijuana] located in the center console," while Detective Powell found a loaded handgun under the driver's seat. Detective Badawy testified that after recovering this contraband from the car's passenger compartment, "[a]n additional amount of – another large amount of marijuana was recovered from the trunk inside of a backpack. THC oil was recovered in addition to ammunition." The officers placed defendant under arrest and conducted a subsequent search of his person, which, according to Detective Badawy, yielded "a large amount of cash, I believe $1,700."

The motion judge found Detective Badawy's testimony credible and sufficient to establish the search of defendant's car was legal. Based on the totality of the circumstances, the judge determined the detectives had reasonable suspicion to conduct an investigative stop of defendant's car both upon witnessing the suspected drug transaction in the motel parking lot and upon witnessing defendant commit a traffic violation. The judge further concluded that the detectives had probable cause to search the car after Detective Badawy smelled raw marijuana coming from the vehicle and after defendant admitted that "he did have a small amount of marijuana in the car." The judge posited that the detective's discovery of "a large amount of marijuana" and "a loaded gun with ammunition" in the car's passenger compartment "gave rise to continuing to search the automobile into the trunk" because:

> Once the car is searched and the objects of criminality are found, that being . . . the initial marijuana and a loaded gun in the car, that allows, based upon case law, the officers to search the trunk in light of there being additional criminality possibly located in the trunk.

The motion judge thus denied defendant's motion to suppress.

Consequently, on May 21, 2018, defendant pled guilty to counts one and three of Indictment No. 17-08-0873 (second-degree unlawful possession of a handgun and third-degree possession of marijuana with intent to distribute) and

6

the sole count of Indictment No. 17-08-0874 (second-degree certain persons not have weapons). In exchange for defendant's plea, the State agreed to dismiss the remaining charges and recommend the following sentence: a seven-year prison term subject to a forty-two-month period of parole ineligibility for the handgun charge, a concurrent extended term of eight years subject to a forty-five month period of parole ineligibility for the possession of marijuana with intent to distribute charge, and a consecutive five-year term without parole for the certain persons charge. As part of the plea agreement, the State agreed defendant could oppose the State's motion for an extended term and argue for all three sentences to run concurrently; at the June 3, 2018 sentencing hearing, the judge considered and rejected these arguments. The judge found aggravating factors three, six, and nine applied, and that no mitigating factors applied. In accordance with the State's recommendations, the judge imposed an aggregate sentence of thirteen years, with an eight-year, nine-month period of parole ineligibility.

This appeal followed, with defendant raising the following arguments:

POINT I

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE OFFICER'S PROBABLE CAUSE TO SEARCH DEFENDANT'S CAR DID NOT ARISE FROM

7

UNFORESEEABLE AND SPONTANEOUS CIRCUMSTANCES. ALTERNATIVELY, THE SEARCH OF THE TRUNK WAS UNREASONABLE.

POINT II

DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE THE TRIAL COURT FAILED TO CONDUCT A YARBOUGH ANALYSIS, ERRED IN ITS FINDING AND WEIGHING OF AGGRAVATING AND MITIGATING FACTORS, AND INCORRECTLY BELIEVED IT WAS BOUND BY THE PROSECUTOR'S SENTENCING RECOMMENDATION.

II.

When reviewing a trial court's ruling on a motion to suppress evidence, we "must uphold the factual findings underlying the trial court's decision so long as the findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotations omitted). Even if we may have reached a different conclusion, we give deference to the factual findings of the trial judge who was "substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case." Id. at 244; see also State v. Gonzales, 227 N.J. 77, 101 (2016) (applying the same review standard). However, we review the trial court's conclusions of law de novo. Elders, 192 N.J. at 252-53.

It is well established that to comply with the federal and New Jersey Constitutions, law enforcement officials generally must obtain a warrant before conducting a search of the person or private property of an individual, unless a recognized exception to the warrant requirement applies. State v. Witt, 223 N.J. 409, 422 (2015). One of those recognized exceptions is the so-called "automobile exception." Ibid.

The search in this case, which occurred in 2017, is governed by our Supreme Court's seminal 2015 opinion in Witt, which "readopted a bright-line rule" for New Jersey's automobile exception to the warrant requirement.[1] State v. Rodriguez, 459 N.J. Super. 13, 24 (App. Div. 2019) (discussing Witt, 223 N.J. at 444-46). Pursuant to Witt, police officers may conduct "warrantless on-the-scene searches of motor vehicles in situations where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and

_____

[1] In Witt, 223 N.J. at 447-48, the Court abandoned the "pure exigent-circumstances requirement" it had added to the constitutional standard in State v. Pena-Flores, 198 N.J. 6 (2009), and State v. Cooke, 163 N.J. 657 (2000), finding that more narrow construction of the automobile exception to be "unsound in principle and unworkable in practice[.]" Witt, 223 N.J. at 415, 447. The Witt Court returned to the standard set forth in State v. Alston, 88 N.J. 211 (1981). Witt, 223 N.J. at 447.

A-2757-18

spontaneous." Rodriguez, 459 N.J. Super. at 22 (citing Witt, 223 N.J. at 447-48).

Defendant concedes that upon smelling the odor of marijuana emanating from his car, Detective Badawy had probable cause to believe the passenger compartment contained contraband. However, defendant argues that the circumstances giving rise to the probable cause were not unforeseeable and spontaneous, and therefore, the warrantless search of defendant's car does not fit within the automobile exception.

Specifically, defendant contends Witt's unforeseeable and spontaneous requirement limits the automobile exception's application to situations where "a chance encounter between the defendants and the police produced suspicion that the defendants' cars contained contraband," and not where probable cause arose "from prior monitoring or suspicion." Based on his interpretation of Witt, defendant argues probable cause did not develop spontaneously because the detectives had reasonable suspicion to perform an investigative stop when they observed defendant engage in a suspected drug transaction in the motel parking lot, yet they did not pull him over until they witnessed him commit a traffic violation. Defendant contends the detectives pulling him over ostensibly for a traffic violation was not a chance encounter, but rather a pretext to stop and

search a person they already suspected of wrongdoing. Defendant argues the detectives could have stopped him in the motel parking lot; when they chose not to stop him in the parking lot, they were required to obtain a warrant to search his car.

We reject defendant's arguments. Witt's unforeseeable and spontaneous requirement merely requires police secure a warrant to search a car "when it is practicable to do so." Witt, 223 N.J. at 449. As explained in Witt, "the inherent mobility of the vehicle" is one of the rationales for the automobile exception, recognizing that "'it [may] not [be] practicable to secure a warrant' given that 'the vehicle [can be] quickly moved out of the locality or jurisdiction.'" Id. at 422 (quoting Caroll v. United States, 267 U.S. 132, 153 (1925)). However, when the probable cause over the vehicle is not connected to or threatened by the vehicle's inherent mobility, police must secure a warrant to find and search the car. In other words, police may "not sit on probable cause and later conduct a warrantless search, for then the inherent mobility of the vehicle would have no connection with a police officer not procuring a warrant." Id. at 432. Thus, the unforeseeable and spontaneous requirement "ensure[s] that police officers who possess[] probable cause well in advance of an automobile search [seek] a warrant." Id. at 431.

Here, the detectives did not have probable cause in advance of encountering defendant, as they had no knowledge or suspicion of him before observing him at the motel. Rather, probable cause arose after the detectives "kept an eye on" a vehicle that aroused their suspicions and pulled over the vehicle when it was clear they had reasonable suspicion to do so. While stationed in the motel parking lot, the detectives first observed defendant engage in behavior that "was indicative of a narcotics transaction[,]" though they did not actually observe an exchange occur. Defendant drove off soon thereafter and committed a traffic violation while exiting the motel parking lot, which led the detectives to pull over his vehicle. The probable cause to search defendant's car arose spontaneously during this investigative stop when Detective Badawy smelled marijuana emanating from defendant's car.

It is clear that it would not have been practicable for the detectives to seek a warrant upon observing conduct that resembled a drug transaction because of the risk the vehicle would be driven away and its contraband removed. Moreover, a warrant would not have issued at that point because detectives had reasonable suspicion, but not probable cause to believe defendant's car contained criminal contraband. Because the probable cause to search defendant's car arose spontaneously and unforeseeably during the valid traffic stop that followed, the

motion judge did not err in finding the search comported with the requirements of the automobile exception.

In the alternative, defendant argues that "even if the search of the car were permissible, extending the search to the trunk of the car was unlawful because there was no probable cause to support a reasonable belief that the trunk contained contraband." We disagree.

The automobile exception applied here because the smell of marijuana emanating from defendant's car furnished Detective Badawy with probable cause to believe the car contained contraband, and, as previously noted, the probable cause developed spontaneously. See State v. Walker, 213 N.J. 281, 290 (2013) ("New Jersey courts have [long] recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present.") (second alteration in original) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)) (internal quotation marks omitted).

However, "[a] police officer must not only have probable cause to believe that the vehicle is carrying contraband but the search must be reasonable in scope." State v. Patino, 83 N.J. 1, 10 (1980). In that regard, "[i]t is widely recognized that a search, although validly initiated, may become unreasonable

because of its intolerable intensity and scope." Id. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)).  Thus, "the scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19 (quoting Warden v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)).  In other words, "[t]he scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 507 (1983).  In order to establish probable cause to conduct a search, the State must show from the totality of the circumstances there is "a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).

We are satisfied that probable cause existed for the detectives to extend their search of defendant's car to the trunk.  The totality of the circumstances suggest a search of the entire car was appropriate: there was a strong odor of marijuana emanating from car, and defendant admitted that the car contained marijuana but failed to disclose it contained weaponry.  When the detectives discovered the loaded handgun in the car's passenger compartment, they had

14

reason to suspect there was contraband hidden elsewhere in the car that defendant failed to disclose.

Additionally, when the detectives discovered the loaded handgun, they had yet to place defendant under arrest. There arose the potential danger of defendant accessing the trunk to retrieve another undisclosed weapon and using it against the detectives. Thus, the police officers' concern for their personal safety further permitted the search of the trunk. See State v. Hammer, 346 N.J. Super. 359, 367-71 (App. Div. 2001) (finding the warrantless search of a vehicle's trunk permissible where police observed hollow bullets fall from the driver's coat, which "immediately created a reasonable belief that the occupants may possess dangerous weapons or that such weapons may be concealed in the car.").

The detectives' search of defendant's car was proper in initiation and scope. We therefore find no error in the motion judge's denial of defendant's motion suppress.

III.

Defendant also asserts he received an excessive sentence. "Appellate courts review sentencing determinations in accordance with a deferential

standard." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must be affirmed, unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

When determining a sentencing term, a trial court must identify whether any of the aggravating factors enumerated in N.J.S.A. 2C:44-1(a) or the mitigating factors in N.J.S.A. 2C:44-1(b) apply, and then balance the applicable factors. Id. at 72. The relevant factors must then be "qualitatively addressed and assigned appropriate weight in a case-specific balancing process." Id. at 72-73 (citing State v. Kruse, 105 N.J. 354, 363 (1987)). The court must also "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence[.]" R. 3:21-4(g).

We "may not substitute [our] judgment for that of the trial court." State v. Natale, 184 N.J. 458, 489 (2005) (quoting State v. Evers, 175 N.J. 355, 386 (2003)). Thus, we must affirm the defendant's sentence, even if we would have

16

arrived at a different result, as long as the trial court properly identified and balanced the aggravating and mitigating factors. Ibid.

The sentencing judge found the following aggravating factors applied: three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3); six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted," N.J.S.A. 2C:44-1(a)(6); and nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9). The judge found no mitigating factors applied.

Defendant argues the sentencing judge failed to state the reasons for imposing the aggravating factors and instead "simply recited" the factors applied, "without adequately explaining the basis for [his] findings." Defendant likewise contends the three aggravating factors lacked factual support in the record. Further, defendant argues the sentencing judge erred in not finding mitigating factor eleven. These arguments lack merit.

Before finding and applying the aggravating and mitigating factors, the judge detailed defendant's criminal history at length, which included numerous convictions for indictable and municipal offenses. The judge noted that some of these prior felonies were drug distribution and gun offenses, for which

17

defendant had spent time on probation, in jail, and in prison. Additionally, defendant "had the benefit of a number of programs over the years" related to his history of substance abuse. "[B]ased on . . . particularly his criminal history[,]" the judge found the three aggravating factors applied.

We find no basis to disturb this conclusion. Defendant's prior indictable convictions, many of which were similar to the convictions under appeal here, and his failure to reform his behavior despite escalating consequences, establish the risk that defendant will commit another offense, that defendant has an extensive criminal record of serious offenses, and that deterring defendant from further criminality is necessary. The judge's recitation of defendant's criminal history is consistent with the presentence report contained within the record, which indicated defendant had six municipal convictions, four indictable convictions, two probation violations, and participated in substance abuse treatment while incarcerated. Therefore, the sentencing judge's application of aggravating factors three, six, and nine was based on sufficient evidence in the record.

Defendant's argument regarding mitigating factor eleven also fails. Defendant did not explicitly invoke mitigating factor eleven during the sentencing hearing, but after making arguments about mitigating factors eight

18

and nine, defendant's attorney stated she would "leave the remaining arguments to my client and his family members." Defendant's mother and sister-in-law as well as defendant himself then testified that his imprisonment would facilitate hardship on defendant's children and family. The sentencing judge acknowledged these statements when they were made but made no reference to them when finding no mitigating factors applied.

Our Supreme Court has stated that "mitigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record." State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Dalziel, 182 N.J. 494, 504-05 (2005)). Indeed, "where mitigating factors are amply based in the record before the sentencing judge, they must be found." Dalziel, 182 N.J. at 504.

Mitigating factor eleven applies where "imprisonment of the defendant would entail excessive hardship to himself or his dependents." N.J.S.A. 2C:44-1(b)(11). However, our Supreme Court has made clear that the mere fact that a defendant has children does not require a trial court to find mitigating factor eleven. Dalziel, 182 N.J. at 505. Instead, a defendant must demonstrate that the children are dependents who will suffer an excessive hardship, i.e. adverse circumstances "different in nature than the suffering unfortunately inflicted

19

upon all young children whose parents are incarcerated." State v. Locane, 454 N.J. Super. 98, 129 (App. Div. 2018).

While the statements of defendant and his family members reasonably called aggravating factor eleven to the sentencing judge's attention, he did not err in declining to find and apply it. Neither the statements of defendant's family nor any other evidence in the record established that defendant's family would suffer a greater hardship than other families with incarcerated members.

Defendant also argues "a remand is required because the sentencing [judge] incorrectly believed that [he] was bound to adhere to the terms set forth in the plea agreement[,]" having stated during the sentencing hearing, "my hands are really tied, aren't they?" and "what discretion do I have in this case to do anything but follow the plea?" While defense counsel explained the judge could sentence defendant to concurrent terms rather than the recommended consecutive sentences, defendant asserts the judge was never made aware that he could impose a lesser sentence than the plea stipulated, the statutory minimum being five years.

This argument lacks merit. While it is true that sentencing courts are not bound to the sentencing recommendations agreed to in plea agreements, State v. Kovack, 91 N.J. 486, 484 (1982), defense counsel did not argue for a shorter

sentence, beyond requesting concurrent terms, and the judge's statements do not indicate he failed to understand his ultimate discretion to sentence defendant within the statutory range. Sentencing defendant in accordance with the plea agreement did not violate the guidelines nor does it shock the judicial conscience. We discern no error from the judge's comments. When viewed in context, the cited comments reflect the judge's assessment that defendant was "looking for less," notwithstanding the fact that his "excellent attorney" had "zealously advocated on his behalf," and already "negotiated a very favorable" plea agreement. The judge further noted, "If [defendant] had gone to trial and if he had been convicted . . . he was facing far more prison time than this plea contemplates."

Finally, defendant argues a remand for resentencing is in order, contending the sentencing judge failed to conduct a proper Yarbough[2] analysis before imposing a consecutive term on his "certain persons" conviction. We disagree.

While sentencing courts must provide a separate statement of reasons for imposing consecutive sentences or risk a remand for resentencing, State v.

---

[2] State v. Yarbough, 100 N.J. 627 (1985).

<u>Miller</u>, 108 N.J. 112, 122 (1987), we may affirm a consecutive sentence "where the facts and circumstances leave little doubt as to the propriety of the sentence imposed."  <u>State v. Jang</u>, 359 N.J. Super. 85, 97-98 (App. Div. 2003).  Thus, a sentence need not be modified or remanded if it is not "clearly mistaken."  <u>Id</u>. at 98 (quoting <u>State v. Kromphold</u>, 162 N.J. 345, 355 (2000)).

In <u>Yarbough</u>, our Supreme Court set forth the factors to be considered when deciding whether to impose consecutive or concurrent sentences.  The <u>Yarbough</u> factors essentially focus upon "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims."  <u>State v. Carey</u>, 168 N.J. 413, 423 (2001) (quoting <u>State v. Baylass</u>, 114 N.J. 169, 180 (1989)).  However, "[t]he <u>Yarbough</u> guideline that provides the clearest guidance to sentencing courts faced with a choice between concurrent and consecutive sentences . . . focuses on the 'facts relating to the crimes.'" <u>Carey</u>, 168 N.J. at 423 (quoting <u>State v. Rogers</u>, 124 N.J. 113, 121 (1991)).

As the State argued at defendant's sentencing hearing, "[P]er Yarbough, the certain persons offense is separate and discrete from the other offenses . . . . [H]e knew that he had no business having a gun, period, given his prior

22

convictions . . . . [T]his is an appropriate consecutive sentence. There are no free crimes." The State further noted," [T]he gun was found underneath the seat . . . . [H]e's a danger to the community, riding around with a loaded gun in a car where it's easily accessible to him."

Addressing the certain persons offense, the judge noted, "[T]his is the second time defendant[ has] been arrested with [a firearm] and convicted . . . of a firearms offense . . . . [T]he firearm was in his . . . possession during the course . . . of a drug offense." The judge further explained, "The reason it's consecutive is because . . . this particular offense, in light of defendant's criminal history, presents . . . a significant threat to the community and the protection of the community warrants a longer sentence."

In this case, the reasons for consecutive sentences, in full accordance with the plea agreement, are self-evident. In addition to the drug offense, defendant pled guilty to two distinct crimes, second-degree unlawful possession of a handgun and second-degree certain persons not have weapons. Imposition of consecutive sentences was appropriate. Defendant received a prison sentence that was less than one-half of his maximum exposure. Defendant cannot legitimately complain that the sentence was excessive or that he received a

sentence other than that which he negotiated. We discern no basis to disturb defendant's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2757-18