987 A.2d 135 (2010)
411 N.J. Super. 483
STATE of New Jersey, Plaintiff-Appellant,
v.
Jason LEWIS and Jerome Lewis, Defendants-Respondents, and
Ladohn Courtney and Dennis Porter, Defendants.
No. A-2066-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 2009.
Decided February 8, 2010.
Theodore J. Romankow, Union County Prosecutor, attorney for appellant (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).
Alan Dexter Bowman, Newark, attorney for respondent Jason Lewis.
Hassen Ibn Abdellah, Elizabeth, attorney for respondent Jerome Lewis, joins in the brief of respondent Jason Lewis.
Before Judges SKILLMAN, GILROY and SIMONELLI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The State appeals, by leave of court, from an interlocutory order, which granted defendants' motions to suppress evidence that is the basis of pending charges against them for possession of cocaine, contrary to N.J.S.A. 2C:35-10(a)(1); second-degree possession of cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); and third-degree distribution of cocaine, contrary to N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3).
The suppressed evidence was obtained as a result of a surveillance conducted by Plainfield police officers during the early evening of February 26, 2007 related to execution of search warrants for four residential premises in Plainfield, a 2007 Nissan Altima, and the persons of codefendants Courtney and Porter, who are not parties to this appeal. The warrants authorized searches for drugs, drug paraphernalia, *136 firearms, and a variety of other evidence of drug distribution activity. The warrants did not name defendants Jason and Jerome Lewis or their car as targets of the searches.
Approximately twenty police officers were assigned to execute the warrants. One of those officers was Detective Troy Alston, who was in an undercover role in an unmarked police car. Alston first spotted Courtney, one of the targets of the warrants, in a Toyota Camry in the drive-through lane of a fast food restaurant located in a high crime area, and followed him to a nearby street. After a few minutes, a blue van pulled behind the Camry. Using binoculars, Detective Alston observed Courtney get out of the Camry and walk to the driver's side of the van. Courtney had a brief conversation with the driver, following which he handed the driver what appeared to be currency and received a "small object" in return. Based on his experience investigating drug dealing, Detective Alston concluded that the exchange between Courtney and the driver was a narcotics transaction. Detective Alston then advised his "take-down unit," which consisted of Detectives Michael Black and Daniel Staten, to pull over the van.
Shortly thereafter, Detectives Black and Staten pulled over the van, which was occupied by Jason Lewis, who was the driver, and Jerome Lewis, who was sitting in the front passenger seat, and a back-seat passenger. Detective Black approached the passenger's side of the van, while Detective Staten approached the driver's side. Detective Black saw the passenger, Jerome Lewis, reach towards his left and appear to place something between the seats. Based upon this movement, Detective Black believed that Jerome Lewis had discarded something. Detective Staten ordered Jason Lewis to get out of the van and Detective Black ordered both Jerome Lewis and the back-seat passenger also to get out of the van.
At this point, Detective Black illuminated the inside of the van with his flashlight and saw a black leather case on the floor in the area where Jerome Lewis had extended his arm as the detectives approached the van. Detective Black opened the door to the van, retrieved the black leather case and looked inside, where he found a large quantity of cocaine.
After Detective Black discovered the cocaine, another police patrol vehicle arrived on the scene. In addition, a group of five or six people began "milling around" the van and police cars.
The motion judge credited the testimony of Detectives Alston and Black. The judge concluded that Detective Black had probable cause to believe that the driver of the van had engaged in a narcotics transaction with Courtney and that the van contained narcotics. The judge based this conclusion on Detective Alston's observation of the interaction between the driver and Courtney, the fact that Courtney was one of the targets of the search warrants the officers had been assigned to execute, and Detective Black's observation of Jerome Lewis apparently discarding something between the seats of the van.
However, the judge concluded that the State had failed to establish the "exigency" required to uphold the validity of the search of the van under New Jersey's version of the automobile exception to the warrant requirement as set forth in State v. Cooke, 163 N.J. 657, 751 A.2d 92 (2000) and State v. Dunlap, 185 N.J. 543, 888 A.2d 1278 (2006). In reaching this conclusion, the judge stated:
With the stop of the Lewis vehicle it could be argued that the element of surprise may have been lost. At least two individuals were in custody. The *137 neighborhood was described as a fairly high crime area.
One resident of the area was seen entering the van after the transaction took place. And while vehicle traffic may have been light, a crowd after the stop and after the seizure soon began to gather. And while the Lewis brothers were in custody the back seat passenger always intended to be released.
Now all those facts might nicely be spliced together and woven together to create the constitutional framework or patchwork of exigency. On the other hand, the plain fact of the matter is that immediately after the occupants were removed from the vehicle Detective Black entered the vehicle and retrieved the leather case.
And while the case was in an area in which Jerome Lewis had gestured, the case itself gave no hint [of] its use. It was closed. There's no testimony that the object was dangerous. And there's no testimony that these officers waited to search and then a crowd gathered.
. . . [Q]uite to the contrary, the occupants of this vehicle were removed, the object was immediately retrieved, and it was opened immediately. And then at that time it was found to contain CDS. And it was only thereafter that bystanders began to gather.
During the pendency of this appeal, our Supreme Court decided State v. Pena-Flores, 198 N.J. 6, 965 A.2d 114 (2009), which reaffirmed and expanded upon the requirement of a showing of exigent circumstances in order to uphold a warrantless search under the automobile exception to the warrant requirement. Pena-Flores contains the following discussion of the requirement of a showing of exigent circumstances and of the factors relevant to an exigency analysis:
Exigency must be determined on a case-by-case basis. No one factor is dispositive; courts must consider the totality of the circumstances. How the facts of the case bear on the issues of officer safety and the preservation of evidence is the fundamental inquiry. There is no magic formulait is merely the compendium of facts that make it impracticable to secure a warrant. In each case it is the circumstances facing the officers that tell the tale.
Legitimate considerations are as varied as the possible scenarios surrounding an automobile stop. They include, for example, the time of day; the location of the stop; the nature of the neighborhood; the unfolding of the events establishing probable cause; the ratio of officers to suspects; the existence of confederates who know the location of the car and could remove it or its contents; whether the arrest was observed by passersby who could tamper with the car or its contents; whether it would be safe to leave the car unguarded and, if not, whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk.
[Id. at 28-29, 965 A.2d 114 (citations and footnote omitted).]
The Court also held that a showing of exigency was not required for law enforcement officers to obtain telephonic and electronic warrants and encouraged increased use of such warrants. Id. at 33-36, 965 A.2d 114.
Applying the previously quoted factors relevant to an exigency analysis to the facts of the two cases before it, the Court upheld the validity of the search under the automobile exception to the warrant requirement in one case, but concluded that the State had not established exigent circumstances in the other.
*138 In Pena-Flores, a police officer stopped a car for motor vehicle violations. Id. at 12, 965 A.2d 114. As the officer approached the car, he noticed dark tint covering the windows and a strong smell of raw marijuana. Ibid. The officer ordered the driver and a passenger out of the car and, after a second officer arrived, entered the car and began to search. Ibid. This search revealed marijuana in plastic bags. Ibid. The officers then placed the defendants under arrest and conducted a full search of the interior of the car, which revealed additional marijuana and a handgun. Id. at 12-13, 965 A.2d 114.
The Court concluded that the police officer's warrantless entry into the car and subsequent searches were justified by exigent circumstances. Id. at 30-31, 965 A.2d 114. In reaching this conclusion, the Court stated:
Here, the stop was unexpected; the police had no prior information of criminality and stopped the vehicle only in response to an aggressive traffic maneuver late at night on the side of a highly traveled road. Importantly, Zsak was unable to look for weapons or contraband from outside the vehicle because the windows were heavily tinted.
Initially, Paredes and Pena-Flores were removed from the vehicle, but were not placed under arrest or secured inside of Greco's patrol car. The ratio of police officers to suspects was two-to-two, and there was no available backup. [Id. at 30, 965 A.2d 114 (citation omitted).]
The Court reached the opposite conclusion in the companion case, Fuller, ruling that the State had not made the showing of exigent circumstances required to justify a warrantless search under the automobile exception. In that case, a trooper stopped a driver for a motor vehicle violation. Id. at 14, 965 A.2d 114. When the driver was asked for his credentials, he produced a license with a photograph that did not appear to match his appearance. Id. at 15, 965 A.2d 114. In addition, the license plate on the car was for another car, and the driver gave suspicious answers to a number of the trooper's questions. Id. at 15-16, 965 A.2d 114. While the trooper who had stopped the car was examining the credentials produced by the driver and questioning him, three additional troopers arrived on the scene. Id. at 15, 965 A.2d 114. After the driver was removed from the car and questioned further, he admitted that the driver's license he had produced when first stopped was not his. Ibid. The trooper then arrested the driver for displaying a false driver's license and hindering his own apprehension. Id. at 16, 965 A.2d 114. Following the driver's arrest, the troopers searched the car for his driving credentials, which revealed a loaded handgun and prescription drugs. Id. at 31-32, 965 A.2d 114. The troopers next conducted a more intensive search of the car, which revealed marijuana, a sword, and other prescription drugs. Id. at 16, 965 A.2d 114.
Although the Court found no problem with the admission of evidence of the handgun and prescription drugs revealed in the search for defendant's driving credentials in the center console, id. at 31-32, 965 A.2d 114, it concluded that the State had failed to show the exigent circumstances required to justify the subsequent more intensive search of the car's interior that revealed the marijuana, sword, and other prescription drugs, id. at 32-33, 965 A.2d 114. In reaching this conclusion, the Court stated:
[The trooper] pulled Fuller over for a traffic violation in broad daylight on a city street at 1:15 in the afternoon. Fuller was subsequently arrested and secured inside the cruiser, and thus had *139 no opportunity to gain access to the vehicle or anything it contained. There is nothing in the record to suggest that Fuller had cohorts who might have come on the scene. [The trooper] was, at all times, assisted by one to three other troopers. The vehicle could have been impounded or one officer could have remained with it while a warrant was sought by telephone or in person. There was simply no urgent, immediate need for the officers to conduct a full search of the automobile.
[Id. at 32 965 A.2d 114.]
We conclude that the facts of this case are closer to the facts in Pena-Flores than to those in Fuller and that, applying the factors relevant to an exigency analysis identified in the Pena-Flores-Fuller opinion, the State made a sufficient showing of exigent circumstances to uphold the search in this case. The stop of defendant's van occurred at night in a Plainfield neighborhood known for high crime and drug sales. As in Pena-Flores, the police had no reason to anticipate in advance that defendants would be involved in drug activity because the targets of their investigation were Courtney and Porter, not defendants. Moreover, the stop of defendant's car occurred at a location where it could be readily observed by persons in the neighborhood, such as the five or six people who congregated in the area after the stop. If they drove by, the occupants of the Camry who apparently had purchased drugs from defendants also would have been likely to observe the van and assume that it contained drugs. Therefore, it cannot be said in this case, as in Fuller, that "[t]here is nothing in the record to suggest that [defendants] had cohorts who might have come on the scene." 198 N.J. at 32, 965 A.2d 114.
Moreover, although a second police car arrived on the scene after the stop, the search of the car and leather case had already been completed before then. Furthermore, it is unclear whether the officers in the second police car would have been available to detain defendants while Detectives Black and Staten applied for a warrant, because the officers involved in the Courtney-Porter investigation were responsible for searching four different residences, a car, and the persons of Courtney and Porter, and according to Detective Black, "were stretched out kind of thin."
In addition, unlike in Fuller, defendants had not been placed under arrest when Detective Black searched their car. In fact, while we agree with the trial court's conclusion that Detective Alston's observation of Jason Lewis engaging in an apparent drug transaction with Courtney, who was one of the targets of the warrants, and Detective Black's observation of Jerome Lewis apparently discarding something between the seats of the car, provided probable cause to believe there were drugs in the car, it does not automatically follow that those observations, by themselves, without the discovery of drugs, would have been sufficient to establish probable cause to arrest defendants. See State v. Chippero, ___ N.J. ___, ___, ___ A.2d ___ (2009) (slip op. at 15-20) (discussing the distinction between probable cause to search and probable cause to arrest). Consequently, if the circumstances confronted by the police officers in this case were found not to have been exigent, the police may have been required to temporarily detain defendants during the period required to seek a warrant.
For all these reasons, we conclude that the State made a sufficient showing of exigent circumstances under the factors set forth in Pena-Flores to justify a warrantless search under the automobile exception.
*140 Furthermore, the validity of the search was not affected by the fact that the drugs were found in a closed leather case rather than in an open area within the passenger compartment of the van. See State v. Guerra, 93 N.J. 146, 151, 459 A.2d 1159 (1983) (apparently adopting holding of United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), that "upon probable cause to search a lawfully stopped vehicle, police may conduct a warrantless search of every part of the vehicle and its contents that may conceal the object of the search"); accord State v. Smith, 306 N.J.Super. 370, 381, 703 A.2d 954 (App.Div.1997).
Accordingly, we reverse the order granting defendants' motions to suppress and remand the case for trial.