16 A.3d 1071 (2011)
419 N.J. Super. 235
STATE of New Jersey, Plaintiff-Respondent,
v.
Thomas J. SHANNON, Defendant-Appellant.
No. A-2549-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 2010.
Decided February 3, 2011.
*1072 Yvonne Smith Segars, Public Defender, attorney for appellant (William J. Sweeney, Designated Counsel, on the briefs).
Luis A. Valentin, Monmouth County Prosecutor, attorney for respondent (Ian D. Brater, Assistant Prosecutor, of counsel and on the brief).
Before Judges WEFING, PAYNE and KOBLITZ.
The opinion of the court was delivered by
KOBLITZ, J.S.C. (temporarily assigned).
Defendant Thomas J. Shannon appeals from his conviction after a jury trial of third-degree possession of a controlled dangerous substance (CDS), cocaine, N.J.S.A. 2C:35-10a(1) (count one of Monmouth County Indictment No. 06-08-1892). He was acquitted of second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5b(2) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d (count five); and second-degree possession of a weapon in the course of committing a drug offense, N.J.S.A. 2C:39-4.1c (count seven). The remaining counts: third-degree possession of CDS within 1000 feet of school property with intent to distribute, N.J.S.A. 2C:35-7 (count three); second-degree possession of CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count four); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d (count six) were dismissed by the State. Defendant was sentenced to a term of three years in prison. Defendant argues on appeal that his motion to suppress the drugs found in the car he was driving should have been granted by the trial court because insufficient exigent circumstances were proven to justify a warrantless search. We are constrained to agree and reverse the conviction on those grounds.
*1073 On appeal defendant raises the following issues:
POINT I
THE EVIDENCE SEIZED FROM DEFENDANT'S VEHICLE SHOULD HAVE BEEN SUPPRESSED BECAUSE THE WARRANTLESS SEARCH OF THAT VEHICLE DID NOT MEET THE REQUIREMENTS OF THE "AUTOMOBILE EXCEPTION"
POINT II
THE EVIDENCE SEIZED FROM DEFENDANT'S VEHICLE SHOULD HAVE BEEN SUPPRESSED BECAUSE THE WARRANTLESS SEARCH OF THE VEHICLE WAS NOT A SEARCH INCIDENT TO DEFENDANT'S ARREST
POINT III
IT WAS ERROR TO DENY DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT AT THE CONCLUSION OF THE STATE'S CASE AND FOR A NEW TRIAL NOTWITHSTANDING THE VERDICT
The Standards for the Motions
The Evidence at Trial
The Law on Possession of CDS
The Law as Applied to this Case
POINT IV
DEFENDANT WAS DENIED HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE GROSS FAILURE OF THE STATE TO CONDUCT A COMPETENT INVESTIGATION, THE RESULTS OF WHICH COULD WELL HAVE VINDICATED APPELLANT
POINT V
DEFENDANT'S SENTENCE WAS EXCESSIVE
Prior to jury selection, the trial court heard a motion to suppress. Only one witness, Asbury Park Police Officer Eddy Raisin, testified at the hearing. He testified to the following facts. He received two weeks of drug enforcement training and had six and one-half years of on-the-job experience. At about 8:25 p.m. on May 20, 2006, he and another police officer from the street crimes unit were driving on patrol in an unmarked patrol car. Defendant, driving a black Jeep Cherokee, sped through a red light at forty to fifty miles-per-hour in a twenty-five mile-per-hour zone and cut off the unmarked police car. The officers turned their car around to follow the Jeep as it pulled into a driveway. Defendant parked behind a Dodge Charger that was covered by a tarp. Defendant exited the car, looked side to side, then pulled up the tarp, opened and closed the door of the Dodge in the driveway, went into the house for five minutes, and then proceeded to get in the Jeep and drive away.
Not wanting to stop defendant in an unmarked car without a siren or overhead lights, Raisin then contacted an officer in a marked police car to stop defendant for the motor vehicle infractions.
Shortly after defendant left the driveway, he pulled over for two minutes and checked the hatchback area and the rear driver's seat area of his Jeep. Before he was stopped by police, defendant failed to stop at a stop sign and failed to use his turn signal. He was then pulled over by the marked police car driven by the officer Raisin had contacted. Another marked car containing a K-9 dog also stopped in front of the Jeep. Raisin testified that he was not suspicious of defendant's movements into and out of the car, but called for another police unit to stop defendant for motor vehicle infractions only.
*1074 One of the four officers at the scene approached the driver's side of the Jeep and then told Raisin that he smelled the odor of raw marijuana emanating from the car. Raisin went to the side of the Jeep and also detected the odor. Raisin, who knew defendant from prior social contact, testified that defendant was sweating, talking fast and appeared nervous. Raisin advised defendant of the motor vehicle infractions, and asked him to step out of the Jeep so the dog could enter it. Raisin explicitly testified that defendant was not under arrest at that time. After defendant exited the Jeep, Raisin patted him down, finding a wad of bills worth almost $4000, which he left in defendant's pocket until after defendant was arrested. Before entering the Jeep, the dog signaled the presence of narcotics. Raisin then searched inside the Jeep. He pulled the seat up and found two bags containing cocaine and crack cocaine, one sandwich bag containing marijuana, drug paraphernalia, including a scale, measuring cup and spoon, and a machete in a sheath. Defendant was then placed under arrest, handcuffed and placed in the back seat of a third marked police car that had also arrived at the scene. At that time a total of four police cars were at the scene; three marked and one unmarked. Raisin said normally a total of five police cars were on the road at one time in Asbury Park.
Raisin testified that defendant was stopped in a high-crime residential area, two blocks from defendant's home. Raisin said that he did not obtain a warrant because the stop was close to defendant's residence and the Jeep was registered to defendant's mother who might have come with another key to take the car. He did not recall any other people in the immediate area of the stop. Raisin said that although he was aware of telephonic search warrants, he had never applied for one.
In deciding the motion to suppress, the trial court found the warrantless search of the Jeep was constitutional under the automobile exception. The court noted that Asbury Park is a small town with a high crime rate and only five police cars on duty at one time. The court found probable cause to believe that narcotics were located in the Jeep based on Raisin, another police officer and the dog detecting the odor of drugs. The court determined exigent circumstances existed because defendant was pulled over in a high-crime area and because someone in the area might have known about the location of the Jeep and its contents based on the fact that defendant previously stopped at a nearby house. The court also found that the search was constitutionally sound under the search incident to arrest exception.
When we review a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Mosner, 407 N.J.Super. 40, 59, 969 A.2d 487 (App.Div.2009) (quoting State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007)) (internal quotation marks omitted). A reviewing court generally defers to a trial court's findings, "which are substantially influenced by [its] opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy...." State v. Davila, 203 N.J. 97, 109-10, 999 A.2d 1116 (2010). However, when an appellate court is convinced that the trial judge's factual findings are "so clearly mistaken `that the interests of justice demand intervention and correction,'" an appellate court shall "`appraise the record as if it were deciding the matter at inception and make its own findings and conclusions.'" Elders, supra, 192 N.J. at 244, 927 A.2d 1250 (quoting *1075 State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)).
Both the United States Constitution and the New Jersey Constitution guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches are presumed to be unreasonable and, therefore, are prohibited unless a recognized exception to the warrant requirement applies. State v. Pena-Flores, 198 N.J. 6, 18, 965 A.2d 114 (2009). Hence, it is the government's burden "to prove the exceptional nature of the circumstances that exempts it from the warrant requirement." State v. Ravotto, 169 N.J. 227, 236, 777 A.2d 301 (2001).
Given that defendant was not arrested prior to the search, the search could not be incident to a lawful arrest. Rather, the central issue here is whether there was an exigency to justify the warrantless search, which must be determined on a case-by-case basis. State v. Dunlap, 185 N.J. 543, 549, 888 A.2d 1278 (2006). In making this determination, courts focus on the issues of officer safety and the preservation of evidence. Pena-Flores, supra, 198 N.J. at 29, 965 A.2d 114. A court should take into consideration the following factors:
the time of day; the location of the stop; the nature of the neighborhood; the unfolding of the events establishing probable cause, the ratio of officers to suspects; the existence of confederates who know the location of the car and could remove it or its contents; whether the arrest was observed by passersby who could tamper with the car or its contents; whether it would be safe to leave the car unguarded and, if not, whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk.
[Ibid.]
The facts in Pena-Flores are similar to the facts here in that the stop was unexpected and caused by motor vehicle infractions. In Pena-Flores, however, the stop took place late at night on a heavily traveled road, and the vehicle's windows were darkly tinted so the police could not look through them for weapons or contraband. Also, in that case only two police officers were available to guard the two occupants of the car. The Court found that exigent circumstances existed because the suspects were not arrested or secured after being removed from the vehicle, and "the ratio of police officers to suspects was two-to-two." Id. at 30-31, 965 A.2d 114. We followed the Court's reasoning in Pena-Flores in our decision in State v. Lewis, 411 N.J.Super. 483, 489, 987 A.2d 135 (App.Div.2010), where we found that exigent circumstances existed where police stopped and searched a car at night in a high-crime area and found drugs.
Here, there was no indication that the Asbury Park police officers did not have sufficient time to obtain a telephonic warrant pursuant to Rule 3:5-3(b). It was not late at night, the stop was in a residential area, and four police officers were initially present at the scene with defendant, who was alone. Raisin indicated that no one had approached the vehicle during the stop. Furthermore, there was no testimony elicited at the suppression hearing that suggested that the police officers or potential evidence in the car were in danger. Defendant was cooperative and had stepped away from the passenger compartment of the vehicle. In the companion case to Pena-Flores, State v. Fuller, 198 N.J. 6, 14, 965 A.2d 114 (2009), the Court found that because the stop took place in broad daylight, and sufficient police officers *1076 were at the scene and not in danger, "[t]here was simply no urgent, immediate need for the officers to conduct a full search of the automobile." Id. at 32, 965 A.2d 114. Here, the circumstances were similar as the police were in no danger, and a telephonic warrant could have been sought expeditiously.
Accordingly, we reverse the order denying defendant's motion to suppress the evidence. In light of our decision regarding the motion to suppress the evidence, it is not necessary to consider defendant's remaining arguments.
Reversed.