NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3666-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MIKHAIL GOULDSON, a/k/a
MICHAEL MARTIN,

 Defendant-Appellant.
______________________________

 Submitted May 16, 2017 – Decided August 10, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Passaic County,
 Indictment No. 13-10-0971.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Michele E. Friedman, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Camelia M. Valdes, Passaic County Prosecutor,
 attorney for respondent (Robert J. Wisse,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant Mikhail Gouldson appeals his conviction following

a jury trial of possessory weapons offenses. He also appeals his
sentence. More particularly, he argues the court erred by denying

his motion to suppress evidence obtained during the search of a

motor vehicle, admitting evidence at trial concerning an email

address, and refusing his request for a limiting instruction about

the email. We affirm the court's denial of defendant's suppression

motion, find the court erred in denying his motions for the

redaction of the email address and for a limiting instruction, and

reverse defendant's convictions and remand for further

proceedings.

 I.

 The criminal charges at issue here arose as a result of a

stop of a motor vehicle driven by defendant. The vehicle was

searched and a bag containing guns, ammunition, gun accessories

and a receipt were found in the truck. Defendant was subsequently

charged in an indictment with two counts of second-degree unlawful

possession of an assault firearm, N.J.S.A. 2C:39-5(f) (counts one

and two),1 two counts of third-degree possession of a sawed-off

shotgun, N.J.S.A. 2C:39-3(b) (counts three and four), and one

count of fourth-degree possession of large capacity ammunition

1
 Defendant was originally charged in counts one and two with
third-degree unlawful possession of a firearm, but the charges
were amended to second-degree offenses.

 2 A-3666-14T2
magazines, N.J.S.A. 2C:39-3(j) (count five). Count four was

dismissed at trial.

 Defendant's Motion to Suppress Evidence

 Defendant moved to suppress the evidence seized from the

vehicle. At the evidentiary hearing on the motion, Paterson police

officer Miguel Cruz testified that at around 7:00 p.m. on February

7, 2013, he was on patrol in a high crime area, and received a

dispatch report that a "heavy set black male" had "brandished a

shotgun in the area of 12th Ave and East 32nd." It was reported

the perpetrator was in a "[d]ark colored sedan" which had a license

plate number starting with "F-1-5." Cruz drove to the area in

response to the report.

 Thirty minutes later, Cruz saw a blue vehicle with a license

plate number beginning with "F-1-5." He followed the vehicle for

a short distance and saw it make an abrupt stop and turn into a

parking spot without signaling. Cruz effectuated a motor vehicle

stop of the vehicle. Cruz also observed another vehicle make an

abrupt stop about three car lengths in front of the blue vehicle.

 Cruz approached the driver's side window of the blue vehicle

and saw that the driver matched the description of the individual

reported to have brandished the weapon. The driver, who was later

identified as defendant, was alone in the vehicle. Cruz observed

that defendant appeared nervous and was wearing what Cruz

 3 A-3666-14T2
recognized as a "quick-release rifle sling" over his shoulder and

across his torso. Cruz asked defendant about the sling and

defendant said, "he always [drove] with [it] on."

 Cruz observed about five individuals exit the vehicle that

had abruptly stopped in front of defendant's vehicle. According

to Cruz, the individuals were larger in stature than him, and

"appeared to be approaching [his] location." They stood

approximately fifteen to twenty feet away from defendant's vehicle

and looked toward Cruz. He concluded the individuals "seemed to

have some type of interest or know [] defendant."

 Cruz asked defendant for his driver's license and the

paperwork for the vehicle but, after looking through the vehicle

for a minute or two, defendant was unable to provide them. Cruz

asked defendant to turn off the car and take out the keys, and

defendant placed the keys on the dashboard. Cruz then secured

defendant by placing him in handcuffs as defendant sat in the

driver's seat. Cruz requested backup, and officer James DiPiazza

responded.

 Cruz asked defendant his name, date of birth, and address.

Defendant told Cruz to contact Detective Stoltz at the Passaic

County Prosecutor's Office. DiPiazza stayed with defendant, while

Cruz contacted Stoltz, who said that defendant "[was] a known gang

member" and "[was] known to have weapons in his possession."

 4 A-3666-14T2
 Cruz returned to defendant's vehicle, shined a flashlight

into the car, and saw two spent rifle shell casings in the back

seat area. Based on Cruz's observations and the information

provided by Stoltz, Cruz believed there was a weapon in the

vehicle, and required that defendant exit the vehicle.

 Cruz testified he did not believe it was safe to secure the

vehicle and have it towed. Cruz did not observe any weapons in the

vehicle but testified rifles are "big guns" that would normally

be kept in a vehicle's trunk. Cruz used the vehicle's keys or the

remote access to open the trunk. He saw what he recognized as a

weapons bag, looked inside of the bag, and found a black and tan

rifle loaded with a thirty-round ammunition magazine and modified

with a "brass catcher"2 attached to the weapon.

 Cruz arrested defendant and placed him in a police car. At

that point, the individuals who had exited the other vehicle left

the scene. Following defendant's arrest, the vehicle was towed to

a secure area. At police headquarters, Cruz found a second rifle

in another compartment of the bag, as well as nine thirty-round

magazines, 205 rounds of .223 caliber bullets and a speed loader.

The bag also contained a receipt from a weapons parts company.

2
 Cruz described a "brass catcher" as a bag that is attached to a
weapon to "catch" and collect the brass shell casings ejected from
the weapon when it is fired.

 5 A-3666-14T2
 After hearing argument, the motion judge found Cruz was a

credible witness, and determined that defendant's failure to

signal provided justification for the motor vehicle stop. The

court also found the anonymous tip about the individual who

brandished the gun, Cruz's observations of the vehicle and its

license plate, and the vehicle's abrupt stop independently

provided a reasonable and articulable suspicion for the motor

vehicle stop.

 Further, the court found that Cruz's observations that

defendant matched the description of the individual reported in

the anonymous tip, and that defendant wore an empty rifle sling

and appeared nervous heightened Cruz's concern for his own safety.

The court determined that Cruz's concern for his safety was also

supported by Stoltz's report that defendant was a known gang member

who was known to carry weapons, and by the presence of the

approximately five individuals who had exited their vehicle and

stood nearby. The court found the motor vehicle stop occurred in

a high crime area while it was dark, and that Cruz also observed

two shell casings in the area of the rear seat of the vehicle.

 The court determined that the search of the vehicle's trunk

was proper due to the exigent circumstances presented. The court

noted that a warrantless search of an automobile is permitted

where the motor vehicle stop is unexpected, probable cause for the

 6 A-3666-14T2
search exists, and exigent circumstances are present making it

impracticable to obtain a warrant.

 The court reasoned that the stop of defendant's vehicle was

unexpected because it was the result of quickly unfolding events

with no advance planning by the police. The court found the

anonymous tip, defendant's failure to produce any paperwork for

the vehicle, the empty rifle sling worn by defendant, the

information supplied by Stoltz, and Cruz's observation of the two

spent shell casings provided probable cause there was a weapon in

the vehicle's trunk.

 Last, the court determined that the totality of the

circumstances presented made it impracticable and unreasonable for

Cruz to obtain a telephonic search warrant or wait for a tow truck

before searching the vehicle. The court found Cruz's search of the

vehicle was objectively reasonable under the circumstances and

denied defendant's suppression motion.

 Defendant's Pretrial Motion on the Admission of the Receipt

 Prior to trial, defendant sought leave to admit the receipt

found in the weapons bag seized from the vehicle's trunk. The

receipt was issued to A.H.,3 and appeared to be a February 2, 2013

shipping invoice from "bravocompanyusa.com." The receipt was not

3
 We use initials, rather than the full name on the receipt, to
avoid the misidentification of anyone sharing the name.

 7 A-3666-14T2
for the guns or any of the other items found in the trunk, but

instead was only for two gun parts. In addition to A.H.'s name,

the receipt included his purported street address, phone number

and an email address of "RU_Blood_Gang@Yahoo.com."

 Defendant sought to introduce the receipt at trial to show

that because it was found in the weapons bag, the guns, ammunition

and accessories belonged to A.H., and not defendant. Defendant

requested that the court admit the receipt with the email address

redacted. Defendant argued the email address was prejudicial

because it suggested gang membership, and had no probative value

because the other information on the receipt showed it was issued

to A.H.

 The court denied defendant's request, noting it had

previously barred the State from introducing testimony that Stoltz

said defendant was a gang member. The court found that because

A.H. used a "blood gang personal email" address, it was reasonable

to assume A.H. "may be a gang member," and that "based upon the

information from [] Stoltz" it was reasonable to assume "defendant

may also be a gang member and there may be a sharing or interchange

of weapons." The court found it would be unfair to the State to

redact the email address because defendant intended to rely on the

receipt to "cast blame" on A.H., and therefore the receipt should

be admitted in its entirety. The court also found that because it

 8 A-3666-14T2
barred the State from introducing Stoltz's report that defendant

was a gang member, it would be "unfair to further diminish the

State's case" by permitting defendant to introduce a redacted

receipt concerning A.H. The court denied defendant's motion.

 Defendant's Trial

 At trial, defendant did not dispute that the guns, ammunition

and other accessories were in the vehicle's trunk. He argued the

State did not sustain its burden of proving that he knowingly

possessed the items and that, contrary to the officers' testimony,

he was not wearing the rifle sling when the vehicle was stopped.

Defendant argued the rifle sling had actually been recovered from

the trunk with the other items. In support of his argument,

defendant relied on the fact that Cruz's police report did not

state that defendant said he always wore the sling while driving,

and that if defendant had been wearing the rifle sling, Cruz would

not have permitted defendant to look through the vehicle for his

license and the vehicle's paperwork.

 Cruz's trial testimony was consistent with his testimony at

the suppression hearing, but he did not testify at trial about the

anonymous tip or Stoltz's report about defendant's alleged gang

membership and proclivity to possess weapons. Cruz also testified

 9 A-3666-14T2
that the receipt was from Bravo Company USA for gun accessories4

and that A.H.'s name and an address were listed on the receipt for

the billing and shipping information. There was also evidence that

it was not defendant's name, address, and telephone number on the

receipt, and that the police never investigated A.H. or the

information on the receipt.

 Cruz first described the email address in response to a

question posed by defense counsel during cross-examination. He

mentioned the email address a second time in response to a question

from the prosecutor on redirect examination. The receipt was

admitted into evidence. Cruz also testified the vehicle was

registered to M.G.5 and that her pocketbook, driver's license, and

a utility bill in her name were found in the vehicle.

 Detective Todd Pearl testified that a search of defendant's

apartment occurred at around 12:30 a.m. on the morning following

defendant's arrest. M.G. answered the door to the apartment. No

items were recovered during the search.6

4
 The receipt was for "a [f]ront site base and a spring rifle M-
16 Action."
5
 We employ initials to protect M.G.'s privacy and to avoid any
misidentification of the M.G. in this matter with others sharing
the same name.
6
 Detective Antonio Urena testified concerning the firearms,
ammunition and accessories recovered. At trial, the parties

 10 A-3666-14T2
 After the presentation of the evidence, defendant requested

that the court provide a limiting instruction that the jury could

not use the email address on the receipt to infer the vehicle was

a "gang car" or that defendant was a gang member. The judge denied

the request, noting her prior ruling denying the request to redact

the email address. The judge reasoned that because defendant moved

the receipt into evidence, redaction of the email address could

leave the impression that A.H. may be a "perfectly law-abiding

citizen . . . and the defendant unluckily use[d] the car with the

weapons in it." The court reiterated that on balance, it would be

unfair to permit defendant to cast doubt on his alleged possession

of the guns and ammunition by arguing that A.H. was the owner,

without presenting all of the information about A.H. the receipt

contained. The court noted the State had indicated it would not

argue defendant was a gang member, concluded the jury should

consider the evidence as presented, and rejected defendant's

request for a limiting instruction.

 The jury found defendant guilty of all of the charges in the

indictment. Defendant filed a motion for a new trial, claiming the

court's denial of his request to redact the receipt and for a

stipulated there was no evidence defendant had a permit to carry
or purchase a handgun or an assault weapon.

 11 A-3666-14T2
limiting instruction was erroneous and deprived him of a fair

trial. The judge denied the motion.

 The court subsequently sentenced defendant to an aggregate

custodial term of eleven years with a seven-year period of parole

ineligibility.7 This appeal followed.

 Defendant makes the following arguments on appeal:

 POINT I

 THE SEARCH OF THE VEHICLE WAS
 UNCONSTITUTIONAL, AND THEREFORE, THE EVIDENCE
 DISCOVERED SHOULD HAVE BEEN SUPPRESSED.

 POINT II

 THE TRIAL COURT'S REFUSAL TO SANITIZE THE
 HIGHLY PREJUDICIAL EMAIL ADDRESS - "RU-BLOOD-
 GANG@YAHOO.COM" – ON THE RECEIPT, COUPLED WITH
 ITS FAILURE TO ISSUE A LIMITING INSTRUCTION
 REGARDING THIS EVIDENCE DEPRIVED [DEFENDANT]
 OF A FAIR TRIAL.

 A. The Trial Court Erred in Denying the
 Defense's Request to Redact the Email
 Address from the Receipt.

7
 The sentence imposed on count two, charging second-degree
unlawful possession of an assault weapon, N.J.S.A. 2C:39-5(f), was
three years with a three-year period of parole ineligibility. A
three-year sentence on a second-degree offense is not an authorized
sentence absent a determination pursuant to N.J.S.A. 2C:44-1(f)(2)
that it was appropriate to sentence defendant in the range for a
crime one degree lower than the offense for which defendant was
convicted. The court made no findings supporting a reduction in
the sentencing range under N.J.S.A. 2C:44-1(f)(2). Neither the
State nor defendant raised the issue concerning the legality of
the sentence on appeal. Because we reverse defendant's
convictions, it is unnecessary to address the issue further.

 12 A-3666-14T2
 B. The Trial Court's Refusal to Issue a
 Limiting Instruction Constitutes
 Reversible Error.

 II.

 Defendant first argues the court erred by denying his motion

to suppress the warrantless search of the motor vehicle. Defendant

does not dispute there was probable cause to search the vehicle,

but instead contends the evidence did not support the court's

determination that the vehicle stop was unexpected and that the

search was justified because there were exigent circumstances.

 In our review of a trial court's ruling on a motion to

suppress, we "must uphold the factual findings underlying the

trial court's decision so long as those findings are 'supported

by sufficient credible evidence in the record.'" State v. Elders,

192 N.J. 224, 243 (2007) (quoting State v. Elders, 386 N.J. Super.

208, 228 (App. Div. 2006)); State v. Handy, 206 N.J. 39, 44 (2011).

An appellate court should "not disturb the trial court's findings

merely because '[we] might have reached a different conclusion.'"

Elders, supra, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J.

146, 162 (1964)).

 It is only where the court is "thoroughly satisfied that the

finding is clearly a mistaken one and so plainly unwarranted that

the interests of justice demand intervention and correction [that

we will] appraise the record as if [we] were deciding the matter

 13 A-3666-14T2
at inception and make [our] own findings and conclusions." Johnson,

supra, 42 N.J. at 162. However, "[a] trial court's interpretation

of the law . . . and the consequences that flow from established

facts are not entitled to any special deference." State v. Lamb,

218 N.J. 300, 313 (2014). Accordingly, "[w]hen, as here, we

consider a ruling that applies legal principles to the factual

findings of the trial court, we defer to those findings but review

de novo the application of those principles to the factual

findings." State v. Hinton, 216 N.J. 211, 228 (2013).

 The United States and New Jersey Constitutions guarantee the

right "of the people to be secure in their persons, houses, papers,

and effects against unreasonable searches and seizures." U.S.

Const. amend. IV; N.J. Const. art. I, ¶ 7. The Fourth Amendment

and Article 1, paragraph 7 of the New Jersey Constitution both

"require[] the approval of an impartial judicial officer based on

probable cause before most searches may be undertaken." State v.

Patino, 83 N.J. 1, 7 (1980).

 Warrantless searches are presumed invalid, State v. Gamble,

218 N.J. 412, 425 (2014), "and the invalidity may be overcome only

if the search falls within one of the specific exceptions created

by the United States Supreme Court," State v. Hill, 115 N.J. 169,

173 (1989). "Because no warrant was sought for the search

and arrest of defendant, the State bears the burden of showing

 14 A-3666-14T2
that the warrantless seizure 'falls within one of the few well-

delineated exceptions to the warrant requirement.'" State v.

O'Neal, 190 N.J. 601, 611 (2007) (quoting State v. Maryland, 167

N.J. 471, 482 (2001)). "The State has the burden of proof to

demonstrate by a preponderance of the evidence that the warrantless

seizure was valid." Ibid.

 Here, defendant challenges the warrantless search of an

automobile. In State v. Pena-Flores, 198 N.J. 6, 28 (2009),8 our

Supreme Court established that a "warrantless search of an

automobile in New Jersey is permissible where (1) the stop is

unexpected; (2) the police have probable cause to believe that the

vehicle contains contraband or evidence of a crime; and (3) exigent

circumstances exist under which it is impracticable to obtain a

warrant." The motion court applied that standard here.

 As noted, defendant does not claim that there was insufficient

probable cause to search the vehicle. He instead argues the search

was unlawful because the motor vehicle stop was not unexpected

because the officer was looking for a car matching the vehicle

defendant was driving. An unexpected motor vehicle stop occurs

when it is "unplanned and unforeseen; the police must 'have no

8
 The parties agree that the Pena-Flores standard applies here.
The Court modified the standard in State v. Witt, 223 N.J. 409
(2015), but Witt was decided after defendant's arrest and therefore
is inapplicable to the search of the vehicle here.

 15 A-3666-14T2
advance knowledge of the events to unfold.'" State v. Minitee,

210 N.J. 307, 320 (2012) (quoting State v. Colvin, 123 N.J. 428,

437 (1991)). "[T]he police cannot, by their actions, create the

exigency they later use to justify the search." Ibid.

 The record supports the court's finding the motor vehicle

stop was unexpected. Although Cruz responded to an anonymous tip,

Cruz had no advance knowledge of whether he would find an

individual or vehicle matching the description provided, and if

so, what he might encounter. He pulled over the vehicle in response

to an unanticipated motor vehicle violation, and it was not until

he stopped the vehicle that he observed that defendant fit the

description provided in the anonymous tip and made other

observations providing probable cause for the search. Thus,

although Cruz had been looking for a vehicle in response to an

anonymous tip providing a description of a car and a partial

license plate, he had "no advance knowledge of the events to

unfold." Ibid.

 Defendant also contends the court erred in finding exigent

circumstances permitted the warrantless search. He contends that

defendant was in handcuffs prior to the search, the car's trunk

was locked, and the individuals in the other car had not become

involved. He argues that the officers had sufficient time to obtain

a telephonic warrant.

 16 A-3666-14T2
 Exigency is determined on a case-by-case basis after a

consideration of the totality of the circumstances. Pena-Flores,

supra, 198 N.J. at 28. The fundamental inquiry is how the

circumstances presented "bear on the issues of officer safety and

the preservation of evidence." Id. at 28-29. "[I]t is the

compendium of facts that make it impracticable to secure a

warrant." Id. at 29. Factors the court may consider in determining

whether exigency exists include, for example,

 the time of day; the location of the stop; the
 nature of the neighborhood; the unfolding of
 the events establishing probable cause; the
 ratio of officers to suspects; the existence
 of confederates who know the location of the
 car and could remove it or its contents;
 whether the arrest was observed by passersby
 who could tamper with the car or its contents;
 whether it would be safe to leave the car
 unguarded and, if not, whether the delay that
 would be caused by obtaining a warrant would
 place the officers or the evidence at risk.

 [Ibid.]

However, these are not "an exhaustive list of the factors that

must come into play." Minitee, supra, 210 N.J. at 321.

 Here, the court carefully and thoroughly reviewed the

totality of the circumstances and determined it was objectively

reasonable for the officers to conclude that their own safety and

interest in preserving the evidence presented exigent

circumstances permitting the warrantless search of the vehicle.

 17 A-3666-14T2
The evidence supports the court's determination. The search

occurred at night in a high crime area. Cruz believed weapons

might be in the vehicle based on: the anonymous tip, Stoltz's

statement that defendant was in a gang and known to possess

weapons, the shell casings in the vehicle compartment, and because

defendant was wearing an empty rifle sling across his chest. See

e.g., State v. Hammer, 346 N.J. Super. 359, 367-71 (App. Div.

2001) (finding exigent circumstances permitting search of

vehicle's trunk for weapons where the driver was unable to produce

his license, the officer observed hollow bullets fall from the

driver's coat, and the officer found a bag of a white powder

substance in the car).9

 There also were approximately five individuals who had been

traveling in a car ahead of defendant and who abruptly stopped

their car, exited, walked toward Cruz and defendant, and stood

9
 Defendant argues Hammer does not support the court's finding of
exigency here because in Hammer we noted that the trunk was
unlocked, thereby increasing the potential for the removal of the
evidence and risk to the officers if others had access to the
weapons in the trunk. The fact that the trunk was unlocked in
Hammer was not dispositive of the issue of exigency, and similarly,
the fact that the trunk here was locked is also not dispositive.
That a trunk may be locked or unlocked is only one factor to be
considered as part of the totality of circumstances in assessing
whether exigent circumstances permit a warrantless search. "There
is no magic formula" to determine exigency; "it is merely the
compendium of facts that make it impracticable to secure a
warrant." Pena-Flores, supra, 198 N.J. at 29.

 18 A-3666-14T2
close by watching Cruz interact with defendant. Thus, in addition

to being in a high crime area, there were others present who may

have been able to remove the evidence or jeopardize the officers'

safety, and thus a delay may have placed the officers or the

evidence at risk. See, e.g., State v. Lewis, 411 N.J. Super. 483,

489-91 (App. Div. 2010) (finding sufficient exigency to justify a

warrantless search where the stop occurred at night in a high-

crime area in a place where the stop "could be readily observed

by persons in the neighborhood, such as the five or six people who

congregated in the area after the stop"); cf. State v. Dunlap,

185 N.J. 543, 550-51 (2006) (finding no exigency where the vehicle

was not in an area known for drug trafficking, there was no basis

to conclude a third person might come and destroy or remove

evidence, there were at least ten officers present, the officers

had time to obtain verbal authorization to record defendant's

conversation with another individual, and noting a stop by only

one or two officers "would likely have changed the calculus").

 Accordingly, we affirm the court's order denying defendant's

motion to suppress the evidence found in the trunk of the vehicle.

The record supports the court's findings of fact and its legal

conclusion that the warrantless search of vehicle was justified

based on the exigent circumstances presented. See Pena-Flores,

supra, 198 N.J. at 28.

 19 A-3666-14T2
 III.

 Defendant also claims the court erred by denying its request

to redact the email address from the receipt and by refusing to

provide a limiting instruction concerning the email. Defendant

argues the email address was irrelevant and unduly prejudicial

because it referred to the Bloods gang and may have been used by

the jury to infer he was a gang member. He contends the receipt

should have been excluded by the court under N.J.R.E. 401 and 403.

He also asserts that even assuming the email address was relevant

and admissible, the court should have granted his request for a

limiting instruction prohibiting the jury from inferring he was a

gang member.

 A trial court is vested with considerable latitude in

determining whether to admit evidence, and that determination will

only be reversed on appeal if it constitutes an abuse of

discretion. State v. Kuropchak, 221 N.J. 368, 385 (2015); State

v. Rose, 206 N.J. 141, 157 (2011); State v. Marrero, 148 N.J. 469,

484 (1997). We will "not substitute [our] judgment for that of the

trial court, unless 'the trial court's ruling "was so wide of the

mark that a manifest denial of justice resulted."'" Kuropchak,

supra, 221 N.J. at 385 (quoting Marrero, supra, 148 N.J. at 484).

 Defendant argues the court erred by finding the email address

on the receipt was relevant. Relevant evidence must have "a

 20 A-3666-14T2
tendency in reason to prove or disprove any fact of consequence

to the determination of the action." N.J.R.E. 401. "When a court

decides whether evidence is relevant, 'the inquiry should focus

on the logical connection between the proffered evidence and a

fact in issue.'" State v. Cole, ___ N.J. ___ (2017) (slip op. at

17) (quoting State v. Bakka, 176 N.J. 533, 545 (2003)). To be

relevant, evidence must "be probative of a fact that is 'really

in issue in the case,' as determined by reference to the applicable

substantive law." Ibid. (quoting State v. Buckley, 216 N.J. 249,

261 (2013)). "Once a logical relevancy can be found to bridge the

evidence offered and a consequential issue in the case, the

evidence is admissible, unless exclusion is warranted under a

specific evidence rule." State v. Burr, 195 N.J. 119, 127 (2008).

 All relevant evidence is admissible "[e]xcept as otherwise

provided in [the] rules or by law." N.J.R.E. 402. Under N.J.R.E.

403, "relevant evidence may be excluded if its probative value is

substantially outweighed by the risk of (a) undue prejudice,

confusion of issues, or misleading the jury or (b) undue delay,

waste of time, or needless presentation of cumulative evidence."

N.J.R.E. 403.

 Based on our careful review of the record, we are constrained

to conclude that the court missed the mark in finding the email

address tended to prove or disprove a fact of consequence in this

 21 A-3666-14T2
matter. Prior to making its decision on defendant's redaction

request, the court ruled the State could not introduce any evidence

concerning defendant's purported gang membership and the State

advised it would not attempt to introduce such evidence or argue

that defendant was a gang member.

 Defendant sought admission of the receipt for the sole purpose

of establishing that the guns and ammunition found in the bag

belonged to someone other than himself. However, establishing the

receipt pertained to A.H., and not defendant, could only be

logically accomplished by comparing the information on it with

defendant's personal information. That is, to the extent the

information on the receipt could be shown to be different than any

known information for defendant, the information demonstrated that

the receipt was issued to a person, A.H., who was not the

defendant. The fact that the name, address and telephone number

on the receipt were different than defendant's tended to prove the

receipt was not issued to defendant but instead was issued to A.H.

 If evidence had been presented showing that the email address

was either different or the same as defendant's email address, it

would have tended to prove the receipt was issued to defendant or

A.H. But there was no evidence introduced concerning defendant's

email address. Therefore, unlike the name, address and telephone

number listed on the receipt, there was no evidential basis upon

 22 A-3666-14T2
which the jury could have used the email address to determine if

the receipt had any connection to defendant. Thus, the email

address had no tendency to establish whether the receipt was issued

to A.H. or defendant, and no logical connection to any facts

related to the issues at trial.

 The court denied the request to redact the email address

because it had "sanitized" the State's case by barring evidence

that Stoltz reported defendant was a gang member. The court

reasoned it would be unfair to the State to permit defendant to

introduce the receipt without the jury being able to consider the

email address as evidence that A.H. was a gang member and therefore

not a "law-abiding citizen." However, the jury was unlikely to

consider A.H. a law-abiding citizen in any event, if it concluded

that A.H. owned the small arsenal of weapons, including assault

firearms, found in the bag.

 We reject the court's rationale because, based on the evidence

presented at trial, A.H.'s status as a putative gang member or

law-abiding citizen did not have a tendency to prove any fact of

consequence. The receipt was admitted for the sole purpose of

showing it was issued to someone other than defendant and, as a

result, the guns found with the receipt belonged to A.H. In our

view, the fact that A.H. was a gang member, a law-abiding citizen,

or something else lacks any logical connection to whether the

 23 A-3666-14T2
receipt was issued to A.H. instead of defendant. The email address

would have been relevant if the State presented competent evidence

that defendant was a gang member or otherwise connected to A.H.

or his purported gang. However, the court barred the State from

directly introducing such evidence, the record is otherwise devoid

of it, and the State never claimed that gang membership by either

A.H. or defendant tended to prove any element of the crimes

charged. We recognize the court's broad discretion in making

evidentiary rulings on the relevancy of evidence but where, as

here, the evidence does not satisfy the standard, the evidence

should have been excluded. See State v. Muhammed, 366 N.J. Super.

185, 202-03, 205 (App. Div. 2004), aff'd in part, rev'd in part,

182 N.J. 551 (2005).

 We also find the court erred by denying defendant's request

to redact the email address under N.J.R.E. 403. "Evidence claimed

to be unduly prejudicial is excluded only when its probative value

is so significantly outweighed by its inherently inflammatory

potential as to have a probable capacity to divert the minds of

the jurors from a reasonable and fair evaluation of the issues in

the case." State v. Wakefield, 190 N.J. 397, 429 (2007) (quoting

State v. Koskovich, 168 N.J. 448, 486 (2001)), cert. denied, 522

U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008). "[T]he mere

 24 A-3666-14T2
possibility that evidence could be prejudicial does not justify

its exclusion." Ibid. (quoting Koskovich, supra, 168 N.J. at 486).

 Here, the lack of any relevance of the email address was

substantially outweighed by its potential for prejudice. The court

denied the motion to exclude the evidence in part to permit the

jury to infer that A.H. was a gang member, expressly finding that

the email address supported a reasonable assumption that A.H. was

a gang member. The court, however, overlooked the risk of potential

prejudice to defendant because the email address also supported

an inference defendant was a gang member; after all, if defendant

was in possession of the contents of the weapons bag, he was also

in possession of a receipt, guns and ammunition from a putative

gang member.10

10
 In its denial of the defendant's motion to redact the email
address, the court found the address made it "reasonable to assume
that [A.H.] may be a gang member." Relying on the email address
and the information provided by Stoltz, the court also found it
was reasonable to assume "defendant may . . . be a gang member and
that there may be a sharing or interchange of weapons." However,
Stoltz's report that defendant was a gang member was not required
to support such an inference. As noted, if the jury inferred that
A.H. was a gang member based on the email address, it may have
reasonably assumed that defendant was a gang member as well.
Indeed, the court denied the redaction motion finding that because
it prevented the State from introducing direct evidence concerning
defendant's putative gang membership, it would be unfair to permit
defendant to introduce the receipt without the email address. The
court said it was "trying not to have introduction of gang
membership, unless . . . defendant seeks to put in the receipt."
The court found that the receipt "may suggest that [A.H.] may be

 25 A-3666-14T2
 "[T]he mere fact, or even allegation, of gang membership

carries a strong taint of criminality." State v. Goodman, 415 N.J.

Super. 210, 227 (App. Div. 2010) (quoting United States v. Acosta,

110 F. Supp. 2d 918, 931 (E.D. Wis. 2000)), certif. denied, 205

N.J. 78 (2011). "The average juror would likely conclude that a

gang member has engaged in criminal activity," which "has the

potential to 'taint' a defendant in much the same way as evidence

of actual criminal conduct." Id. at 228; see also United States

v. Abel, 469 U.S. 45, 48, 105 S. Ct. 465, 467, 83 L. Ed. 2d 450,

455 (1984) ("It is settled law that the government may not convict

an individual merely for belonging to an organization that

advocates illegal activity."); State v. Nelson, 155 N.J. 487, 508

(1998) (finding evidence surrounding defendant's membership in a

gang was irrelevant to sentencing), cert. denied, 525 U.S. 1114,

119 S. Ct. 890, 142 L. Ed. 2d 788 (1999). But see State v. Torres,

183 N.J. 554, 573 (2005) (finding evidence of the defendant's gang

involvement admissible "to show the connection between defendant's

actions as the leader of the gang and the actions of the other

gang members who actually committed the murder").

a gang member and may be sharing it." Thus, the court permitted
introduction of the email address to support the reasonable
inference that A.H. and defendant were gang members sharing the
items found in the trunk.

 26 A-3666-14T2
 Evidence permitting the inference defendant was a gang member

had "the potential to 'taint' defendant in much the same way as

evidence of actual criminal conduct," and the evidence should have

only been admitted if the requirements of N.J.R.E. 404(b) and the

standard established in State v. Cofield, 127 N.J. 328, 338 (1992),

were met. Goodman, supra, 415 N.J. Super. at 228.11 The court

recognized that any suggestion defendant was a gang member was

prejudicial to defendant. In denying defendant's motion to redact

the email address, the court noted that it "sanitized" the State's

case of any mention of defendant's putative gang affiliation

because it was "highly prejudicial information."

 In its earnest effort to be fair to the State, the court

allowed the result it sought to avoid. Although it barred the

State from introducing any evidence of defendant's alleged gang

membership, the court permitted the admission of otherwise

irrelevant evidence supporting an inference that A.H. and, by

11
 We do not consider whether the email address should have been
excluded under N.J.R.E. 404(b) because defendant has neither
raised nor briefed the issue on appeal. See Jefferson Loan Co. v.
Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008); Zavodnick
v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001). However, our
case law concerning the admission of gang membership evidence
under N.J.R.E. 404(b) informs our analysis of defendant's N.J.R.E.
403 argument because it concerns the potential for undue prejudice
presented by such evidence. See Goodman, supra, 415 N.J. Super.
at 226-27.

 27 A-3666-14T2
extension, defendant were gang members. We agree with the court

that evidence supporting the inference that defendant was a gang

member posed substantial risk of undue prejudice. For that reason,

the email address should have been redacted. See N.J.R.E. 403. The

court erred in ruling otherwise.12

 We next consider whether admission of the email address

constituted harmless error, R. 2:10-2, and must determine if its

admission was clearly capable of producing an unjust result. State

v. Randolph, 228 N.J. 566, 592 (2017). "The harmless error

standard . . . requires that there be 'some degree of possibility

that [the error] led to an unjust [verdict]. The possibility must

be real, one sufficient to raise a reasonable doubt as to whether

[it] led the jury to a verdict it otherwise might not have

reached.'" State v. R.B., 183 N.J. 308, 330 (2005) (second and

fourth alterations in original) (quoting State v. Bankston, 63

N.J. 263, 273 (1973)); see also State v. Macon, 57 N.J. 325, 338

(1971) (finding error is harmless unless there is a reasonable

doubt that the error contributed to the verdict). Our determination

12
 Because we conclude the evidence should not have been admitted
under N.J.R.E. 401 and should have been excluded under N.J.R.E.
403, it is unnecessary to address defendant's contention that the
court erred by failing to provide a limiting instruction, other
than to note that an appropriate limiting instruction may have
ameliorated the prejudice to defendant from the erroneous
admission of the evidence.

 28 A-3666-14T2
of whether an error is clearly capable of producing an unjust

result "depends on an evaluation of the overall strength of the

State's case." State v. Nero, 195 N.J. 397, 407 (2008) (quoting

State v. Chapland, 187 N.J. 275, 289 (2006)); see also State v.

Sowell, 213 N.J. 89, 107-08 (2013) (affirming conviction given

strength of evidence against defendant despite admission of

improper expert testimony); State v. Soto, 340 N.J. Super. 47, 65

(App. Div.) (holding that erroneous admission of hearsay testimony

that the defendant was involved in a robbery was harmless error

in view of the other proofs establishing guilt), certif. denied,

170 N.J. 209 (2001).

 Here, defendant did not dispute that he was driving the

vehicle or that the guns and ammunition were found in the trunk.

Defendant argued only that the State failed to prove beyond a

reasonable doubt an essential element of the possessory offenses

charged in the indictment: that he knowingly possessed the guns

and ammunition in the trunk. N.J.S.A. 2C:2-1. We therefore measure

the impact of the introduction of the email address on the State's

burden of proving such knowledge to determine if the email address

was clearly capable of producing an unjust result.

 It is not a simple task to prove beyond a reasonable doubt

that a person driving a car borrowed from another has knowledge

of the contents of a bag in the car's locked trunk. Here, essential

 29 A-3666-14T2
to the State's proof that defendant had knowledge of the contents

of the bag was the evidence that defendant was wearing a quick

release rifle sling which accommodated one of the rifles found in

the trunk. But the State's case was not without credibility issues

concerning that evidence.

 The credibility of the State's evidence was challenged by

testimony showing defendant was permitted to rummage through the

vehicle immediately following the stop, the police inventoried the

rifle sling with items taken solely from the bag found in the

trunk, and the police report about the stop did not mention

defendant's purported statement that he always wore a rifle sling

when he drove. Defendant argued the evidence showed that contrary

to the officers' testimony, he was not wearing the rifle sling and

that it was actually found in the bag in the trunk. He also argued

that without the evidence he was wearing the sling and made the

statement about wearing it, the State could not have proven beyond

a reasonable doubt he knew about the guns and ammunition in the

trunk.

 Against this backdrop, we conclude that the admission of the

email address was clearly capable of producing an unjust result.

R. 2:10-2. The email address supported an inference that A.H. and

defendant were gang members. The email address therefore permitted

the jury to assume defendant "engaged in criminal activity,"

 30 A-3666-14T2
Goodman, supra, 415 N.J. Super. at 227, in its assessment of the

credibility of the State's evidence. This was improper, raises a

reasonable doubt as to whether it caused the jury to reach a

verdict it may not have otherwise reached, and constitutes an

error that we do not consider harmless. See R.B., supra, 183 N.J.

at 330.

 We affirm the court's order denying defendant's motion to

suppress evidence, reverse defendant's convictions, and remand for

further proceedings in accordance with this decision. We do not

retain jurisdiction.

 31 A-3666-14T2